## Case No. 17,122.

### WALTER et al. v. ROSS et al.

[2 Wash. C. C. 283.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1808.

SALE — STOPPAGE IN TRANSITU — INDORSEMENT OF BILL OF LADING — FACTORS — AUTHORITY TO BIND PRINCIPAL.

1. A summary of the law relative to stoppage in transitu.

[Cited in Ruhl v. Corner, 63 Md. 185.]

2. The endorsement and delivery of a bill of lading, or the delivery of the bill without endorsement, if the cargo is, by the terms of it, to be delivered to a particular person, amounts to a transfer of the property, subject to the right of the vendor, if the consideration be not

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

paid, to reclaim the property before it shall get into the actual possession of the vendee.

[Cited in Wiener v. The Rafael Arroya, Case No. 17,621; The Thames, 14 Wall. (81 U. S.) 106.]

3. If a factor sell, bona fide, the goods of his principal for a valuable consideration, by assigning over the bill of lading, the sale is valid against the principal. But such a sale is not valid, unless the bill of lading for the goods has been received by the factor.

[Cited in brief in Davenport Nat. Bank v. Homeyer, 45 Mo. 147. Cited in First Nat. Bank v. Northern R. R., 58 N. H. 204. Cited in brief in Schmertz v. Dwyer, 53 Pa. St. 338.]

4. The principal may follow the money in the hands of the purchaser, and if not paid to the factor, he may recover it.

5. Goods sold, bona fide, while at sea, by assignment of the bill of lading, the right of the principal to stop in transitu ceases.

6. A factor has no property or interest in the goods beyond his commissions, and cannot control the right of the principal over them.

At law.

WASHINGTON, Circuit Justice. This is an action of trover and conversion, in which a verdict has been found for the plaintiffs, subject to the opinion of the court upon the following case. Shoemaker & Traverse, merchants, of Philadelphia, became considerably indebted to the plaintiffs, of Boston, in the year 1806, in a course of commercial dealings which had taken place between them. With a view to discharge this debt, they made various shipments of goods, sometimes to the plaintiffs, and sometimes to other houses, with orders to pay over the proceeds to them; and it was to be remarked, that every consignment to the plaintiffs was accompanied by a bill of lading and invoice. On the 1st of November, 1806, Shoemaker & Traverse wrote to the plaintiffs, and promised to make them a remittance by the middle of that week, but without expressing in what way, whether by bills, money, or goods; but on the 8th of the same month they explain their meaning, and upon receipt of a large sum of money expected from St. Thomas's, promised to remit a draft on one of the Boston banks. On the 19th, they mention their expectation of receiving a considerable sum in specie, and certain cargoes of West India articles, and promise a remittance as soon as they arrive, in which expectation they were probably disappointed, as nothing more was heard of this remittance, and in fact, the correspondence between the parties seemed to have terminated until the 27th of December, when Shoemaker & Traverse announced their failure, and determination to call their creditors together. Before this latter period, Shoemaker & Traverse had purchased and shipped on board the Goram, a general ship, then lying in the port of Philadelphia, sundry parcels of flour, and amongst them, one hundred and fifty barrels, purchased from the defendants, which, however, were never paid for. For this parcel, the captain of the Goram signed three bills of lading, by which, taken in connexion with the invoice, he engaged to deliver the flour to the plaintiffs or their assigns, and they expressed that the same was shipped on account, and at the risk of the shippers. These bills bear date the 3d of December, 1806, one of which was retained by the captain, and the other two by Shoemaker & Traverse. Shoemaker & Traverse, about the 5th of December, finding that they would be compelled to stop, and understanding from their clerk, that this flour had been purchased from the defendants, and not paid for, they directed him to return them the flour, and to do whatever might be necessary to give them possession of it. The clerk, in obedience to these orders, delivered to the defendants the two bills of lading which had been retained, and returned to them the bills of parcels. The captain refusing, however, to give up the flour, the defendants sued out a writ of replevin, and in this way obtained possession of it. It appears, by the evidence of Mr. Shoemaker, that Shoemaker & Traverse had received no orders from the plaintiffs to make this shipment; that, though shipped at their own risk, and upon their own account, it was, nevertheless, their intention, that the nett proceeds should be applied towards the discharge of their debt to the plaintiffs. No bill of lading, invoice, or letter of advice, respecting this shipment, was at any time forwarded by Shoemaker & Traverse to the plaintiffs. But the captain, upon his arrival at Boston, delivered to the plaintiffs the bill of lading, of which he was possessed. The question is, are the plaintiffs entitled to recover?

A number of cases have been read and relied upon, to prove, on the one side, that Shoemaker & Traverse had a right to stop this flour before it got into the possession of the plaintiffs; and on the other side, that no such right existed. It is not easy to understand how the doctrine, in most of those cases, respecting the right of stoppage in transitu, can be made to bear upon this case. For, in the first place, this is not the case of a sale by the shipper to the consignee; and if it were, being made to a creditor, whose debt exceeded the value of the flour, it cannot be said that the consideration had not, or might not be paid. A contract of sale, accompanied by delivery, amounting to a complete transfer of personal property, the question would naturally arise, how far the shipment of a cargo by the vendor to the vendee, constituted such a delivery, as would deprive the former of his equitable right to reclaim the property, until the consideration is paid or secured. This point first occurred in equity, and was decided in the case of Wiseman v. Vandeputt, 2 Vern. 203, and afterwards in Snee v. Prescot, 1 Atk. 245, where the right of the vendor to stop the goods in transitu, in case of the insolvency of the vendee, before the goods had come into his actual pos-

session, was established. The same question soon arose in the courts of law, who adopting the equitable principle laid down in the above cases, gave similar decisions in favour of the vendor. They considered the endorsement and delivery of the bill of lading, or the bill without an endorsement, if the cargo is, by the terms of it, to be delivered to a particular person, as amounting to a transfer of the property to the vendee, subject, nevertheless, to the right of the vendor, if the consideration be not paid, to reclaim the property before it should get into the actual possession of the vendee, until which time the contract, to use the words of Justice Ashurst, in Lickbarrow v. Mason [2 Term R. 63], was considered as ambulatory. All the cases to be met with in the books, are either those of goods shipped by order of the consignee, and upon his account, and at his risk, or without orders, and for account and at the risk of the shipper. The first class of cases is founded upon contracts of sale, such as Fearon v. Bowers, 1 H. Bl. 364, note; Stokes v. La Riviere, cited in 3 Term R. 466; Hunter v. Beal, Id.; Burghall v. Howard, cited in 1 H. Bl. 365; Hodgson v. Loy. 7 Term R. 440; Ellis v. Hunt, 3 Term R. 464; Hunt v. Ward, cited in Id. 467; Mills v. Ball, 2 Bos. & P. 457; Holst v. Pownal. 1 Esp. 242; Northey v. Field. 2 Esp. 613; Slubey v. Heyward, 2 H. Bl. 504; Lickbarrow v. Mason, 2 Term R. 63; Salomons v. Nissen, Id. 674; Fowler v. M'Taggart, cited in 7 Term R. 442; Feise v. Wray, 3 East, 93.

With respect to goods shipped without orders, and upon account and at the risk of the shipper, they are all cases of principal and agent or factor; and the law, in respect to these cases, depends upon circumstances peculiar to each. If the factor sell the goods to a bona fide purchaser, for a valuable consideration, by assigning over the bill of lading. there is no distinction, in principle, between such a case and those just mentioned; for if the bill of lading and the endorsement, where one is necessary. direct the goods to be delivered, generally, third persons are not to know but that the property is in the consignee as vendee; and if a purchase be fairly made, it is nothing less than a sale by the consignor, through the intervention of an agent. But whether even this could be done, before the goods had got into the actual possession of the factor, was made a question in the case of Wright v. Campbell, 4 Burrows, 2046. in which the whole doctrine upon the subject was laid down by Lord Mansfield. The points decided by him were, that no matter how general the endorsement of a bill of lading is, yet. as between the principal and factor, the former retains a lien until delivery, and even until the property is actually sold and turned into money; and that the property may even be followed into the hands of an assignee of the bill of lading. who had notice of the circumstances. But if the goods are, bona fide, sold whilst at sea, by assignment

of the bill of lading, the right of the principal to stop in transitu is defeated, because, in such case, the property had been sold by the authority of the real owner. Appleby v. Pollock, cited in Abb. Shipp. 240, of which we can find no full report, was either a case of goods consigned by order. and of course sold, or a consignment to a factor, who, bona fide, assigned away the bill of lading. The case of Dick v. Lumsden, Peake, 189, is that of a consignment to a factor, who fairly assigned the bill of lading for a valuable consideration. In Snee v. Prescot, 1 Atk. 245, Ragueneau, the Italian factor, was considered as entitled to stop the goods in transitu, in respect of the interest which he had in them; having paid out of his own pocket a part of their price, although the goods were in fact taken in part for goods belonging to Tollet, his principal.

If the factor has not sold the goods in the manner just mentioned, it is impossible that any question can ever arise, as between him and his principal, respecting the right of the latter to reclaim the property at any time before they are bona fide sold. The factor has no property or interest in the goods beyond his commissions, and of course cannot controvert the right of his principal. If, indeed, he be a creditor of the shipper, he has a contingent interest in virtue of his right of lien, which the possession would give; but for the perfection of this right, he must acquire and retain an actual possession of the property; a constructive possession will not do. Kinloch v. Craig, 3 Term R. 119, 783. In the cases just mentioned of goods shipped without orders and at the risk and upon the account of the shipper, it will be observed that the consignee, who is strictly a factor, claims the property for the use of the shipper, and. consequently, the latter, as has been stated. may at any time countermand the consignment. But it may happen that the consignee is entitled to the property for the use of a third person; and in that case, though he acts as agent for the shipper, he stands in the character of a trustee for such third person; and if the consideration has been paid, by the cestui que trust, the consignor can no more reclaim the property, than he could if the same had been consigned directly to the person for whose use the property was intended. The consideration may be said to be paid, if the goods are shipped in satisfaction of a pre-existing debt.

How do these principles apply to the present case? What is the evidence of the plaintiff's title? The bill of lading authorized the delivery of the flour in question to the plaintiffs, or to their assigns. But, for whose use? Judging from the import of the bill of lading, taken in connexion with the invoice, the answer is obvious:—for the use of the shippers upon whose account, and at whose risk, the shipment was made. What is this, then, but the naked case of a consignment by a merchant to his factor, to sell. and to apply the proceeds as the shipper should direct? Suppose the flour had not been stopped, but had

arrived safe at Boston—where would have been the evidence of the plaintiffs' right to demand a delivery of it to them? They had no bill of lading, no invoice, not even a letter of advice, to produce as the evidence of their right; and the bills of lading, being negotiable, from the terms of them, might have been passed by the plaintiffs into the hands of a third person. The possession of the bill of lading by the person to whom the cargo is deliverable, whether as original consignee or as endorsee, vests in him a legal right to the property. Caldwell v. Ball, 1 Term R. 205. But no such transfer arises from the bill retained by the master, because such is not the intended operation of it. Abbot says (Shipp. p. 143) that "three bills of lading are taken by the shipper, one of which he retains, and the other two he sends to his agent, or some other person, one by the vessel, and the other by some other conveyance." But he adds, "the master should also take care to have another part, for his own use:" by which it would seem, that his part transfers no right to any one. It is for his own use, and is evidence of his right to collect the freight. Can it be possible, that the master should have it in his power to vest a legal right in the consignee, or to withhold it, by giving or refusing him possession of a paper intended, solely, to serve the purposes of the master himself? Certainly not. The court wishes not to be understood as meaning to say, that a bill of lading, endorsed to a particular person, or which, in the body of it, directs the delivery to him, is essentially necessary to invest him with a right to demand the cargo. The possession of a bill of lading to order, not endorsed; a promise by the shipper to endorse it, or to send a bill of lading; or perhaps even a letter of advice, stating the shipment to be to a particular person, may, as between these parties, and where the consideration is paid, give to the consignee an equitable title, sufficient to repel the right of the consignor to countermand, and even to defeat the legal right of the holder of the bill of lading, with notice of the circumstances. The master would, in such case, certainly act at his peril, in delivering the cargo to such equitable claimant; but if his title, as such, can be made out, it is probable he would incur no risk. Had Shoemaker & Traverse been bound, by any prior agreement with the plaintiffs, to make this shipment on account of their debt; or even if the bill of lading had been forwarded by them to the plaintiffs, with a letter of advice stating the purpose of the consignment; or possibly (as to which, however, no positive opinion is intended to be given) if such a letter, without the bill of lading, had been forwarded; a very different case would have been presented to the view of the court, from that under consideration. If the flour had got into the actual possession of the plaintiffs, they might have retained it, in virtue of their lien, for the balance of their account. But here is no contract—no

transfer of property, by means of a bill of lading, or even a letter of advice—no specific appropriation of the proceeds, and no possession by the consignee. No contract, because, though the letters of the 8th and 19th of November speak of remittances generally, yet so far from making an appropriation, or containing a promise to appropriate this particular cargo to the payment of the debt due from Shoemaker & Traverse to the plaintiffs, they obviously refer to a remittance, in drafts, in specie, or in West India goods, which Shoemaker & Traverse expected to receive.

If there be any case in the books, which decides the right to be in the intended consignee, under such circumstances, we have not met with it; and yet it is believed 'that not one case has escaped our researches. Haille v. Smith, 1 Bos. & P. 565, was the case of a consignment to a factor or trustee, in pursuance of a special agreement that the goods should be sold, and the nett proceeds applied to the indemnification of a third person, for advances to be made, and which were actually made. The legal title was vested in the consignee, subject to a trust in favour of a third person, who had paid a valuable consideration for the property shipped; of course, the right to stop in transitu could not occur. In the case of Hibbert v. Carter, 1 Term R. 745, the bill of lading was endorsed and delivered by a debtor to his creditor; which the court considered as, prima facie, a transfer of the property itself, and as a payment pro tanto. But when it afterwards appeared upon a second trial, that the real intention was only to charge the nett proceeds, the court determined, that the property in the goods did not pass by the endorsement, and that consequently the consignor had an insurable interest. In the case of Kinloch v. Craig, 3 Term R. 119, 783, a bill of lading and an invoice were transmitted, and the object of the consignment' was declared to be, to enable the consignee to discharge certain acceptances, made on account of the consignor; but the bill of lading not having been endorsed, no right passed to the holder of it, as owner, and he was considered as standing merely in the condition of a factor. The case of Smith v. Bowles, 2 Esp. 578, and Atkin v. Barwick, 1 Strange, 165, amount to nothing more than this: that if a debtor send specie or goods to his agent, to be delivered over to his creditor, though without the knowledge of the creditor, the agent is not only bound, by accepting the consignment, to perform the trust, but the possession of the agent or trustee, so far vests in him the absolute property clothed with the trust, that it is not afterwards countermandable by the debtor. In these cases, there was a specific appropriation made by the debtor—an express declaration of the trust, to the perfection of which nothing was wanted but the assent of the cestui que trust; but which, according to the case of Brand v. Lisley, Yel. 164, amounted to a

transfer of the right until dissent; and further, there was an actual possession of the property in the trustee.

It has been before stated, that in the case before the court, there was no possession in the plaintiffs, or in any other person for their use; for surely it cannot be contended, that the mere possession of the master of a general ship, was the possession of the plaintiffs. It has also been stated, that in this case there was no appropriation of this flour —no written, and not even a verbal declaration of a trust in favour of the plaintiffs. The fact is certainly so. The private intentions of Shoemaker & Traverse were to apply the nett proceeds of this shipment to the payment of their debt, but it was at all times in their power to change such intention; and, certainly, to permit the rights of third persons to be affected by a subsequent declaration of those intentions, could be supported by no principle of law or equity. Suppose this consignment had been made to some third person, but intended to be for the purpose of satisfying the plaintiffs' demand; could the right of Shoemaker & Traverse to countermand the consignment have been questioned? and in what would the supposed case differ from the real one, except in this, that if, in the latter, the flour had got into the actual possession of the plaintiffs, they might have retained it by force of their lien? Had Shoemaker & Traverse thought it more for their advantage to sell this cargo at Philadelphia or elsewhere, than at Boston; or chose to make an equal distribution of it amongst all their creditors; or to prefer the defendants to the plaintiffs; neither the bill of lading in the possession of the master, nor their former mental determinations, could oppose the exercise of their right to do so; and upon paying the master his freight, and indemnifying him against the consequences of his engagement to deliver the cargo to the plaintiffs, it was not competent to the master to refuse to return the cargo.

The proposition stated by Lord Mansfield, in the case of Alderson v. Temple, 4 Burrows, 2235, is much too general to be safely applied in any case. It would seem, as if he had a view to goods which had been ordered and paid for, which would be the common case of vendor and vendee. He speaks of a cargo consigned, which must mean a consignment in the usual way, or accompanied at least by some written evidence of the intended appropriation. If this was his meaning, the dictum (for it amounts to no more) goes no farther than what is laid down in the case of Atkin v. Barwick, upon which he appears to have founded it. The principal case was that of a note endorsed and sent by a debtor to his creditor, and received by him; and the dispute was between the creditor and the assignees of the debtor. The case of Summeril v. Elder, 1 Bin. 106, was that of goods purchased by a factor with funds in his hands, which were put on board, as the property of his principal, and specifically appropriated, as such, by a letter addressed to his principal, as well as by a bill of lading. They were, in fact, the property of the person whose funds had been employed in the purchase of them, independent of the bill of lading; as to the effect of which, as stated by the court in that case, we give no opinion. Justice Le Blanc, in the case of Coxe v. Harden, 4 East. 220, says, that where goods are sent by A to B, according to order, and are shipped on his account and risk, the goods become the property of B, without any bill of lading, subject only to the right of stoppage in transitu. In the case of Stevenson v. Pemberton, 1 Dall. [1 U. S.] 3, the cargo was shipped by a debtor to a creditor, with orders to sell, and apply the proceeds to the payment of his and other debts. The right of the consignee was established against another creditor of the consignor— but why? Because the goods had not only got into the actual possession of the consignee, but the purpose for which the consignment was made was specified. The case of Wood v. Roach, 2 Dall. [2 U. S.] 180, decides nothing very important to this point, as the question was left very much to the jury. But in that case, it is stated, that the bill of lading was delivered to the consignee; and one question left to the jury was, whether the consignment was for the use of the consignee or consignor; which might depend very much upon evidence that does not appear in the case. The evidence, as to this, was probably against the consignee, as the verdict was in favour of the plaintiff.

Upon the whole, it is the opinion of the court, that judgment ought to be in favour of the defendants. It is not an unpleasant consideration, that the legal ground upon which this decision is believed to be made, is consonant with the justice and equity of the case; for although it was perfectly honest in Shoemaker & Traverse to pay the debt which was due to the plaintiffs, it ought not to have been paid with property, to which, in conscience, they were not entitled.