WRIG-ht, J.,
delivered the opinion of the Court.
We have been unable to find any error in the judgment of the Circuit Court in this case for which it should be reversed.
The plaintiff was not the purchaser or owner of this bacon. If he had been, the delivery to the defendant, *93 as a common carrier, for transportation to him, would have entitled him to its safe delivery; and neither A. G-. Henderson or the ' defendant could lawfully have changed its destination, or diverted it from him.
But here is a different case altogether. Henderson was the owner of the hacon, and' the plaintiff merely his factor to sell it on his account. It is not necessary for us to consider whether the plaintiff, standing in the relation which he did to- this property, could maintain an action against a mere wrong-doer, acting in opposition to the rights both of him and Henderson, the owner. The case here is the same as a contest between him and the owner; for Henderson has sanctioned all that the defendant did, and has, in fact, received the proceeds of the bacon, and is satisfied.
If the factor have no property in the goods, and no lien, the owner has a perfect right to dispose of them as he may please, and the factor -cannot control him in this right. Walter et al. v. Ross et al., 2 Wash. C. C. Rep., 283; De Forest v. The Fulton In. Co., 1 Hall’s Rep., 84, 116; Story’s Agency, § 372.
The case then resolves itself into this: Had the plaintiff, as against Henderson, any property in this bacon, or any lien upon it ? That he had neither we think clear from the authorities.
Mr. Story, in his work on Agency, § 354, says: Liens are of two sorts, particular and general. A particular lien is usually defined to be the right to retain a tning for some charge or claim growing out of or connected with that identical thing; such as for labor, or services, or expenses bestowed upon that thing. A general lien is a right to retain a thing, not only for *94 charges and claims specially arising- out of or connected with the identical thing, but also for a general balance of accounts between the parties in respect to other dealings of the like nature. It is less favored, and is construed somewhat more strictly by Courts of law than a particular lien; although, certainly, the tendency of late years in the commercial community has been rather to expand than to restrict the cases in which it is to be implied by the usage of trade.
But no special property can exist in the factor, or any lien, general or particular, unless he have possession, either actual or constructive of the goods. I speak of the case where the consignor remains the owner, as did Henderson in this case.
By constructive possession, is meant the possession of his servants or agents in the proper discharge of their duty. And it cannot be made to apply to the defendant in this case. For it seems to be well settled, that if the thing has not arrived to the possession of the factor, but is still in transitu, or, if he has only a right of possession, the lien does not attach. Story on Agency, sec. 361; 3 Kent, 638; Kinlach v. Craig, 3 Term. Rep., 119, 783; Smet v. Pyne, 1 East, 4; 2 Wash. C. C. Rep., 283.
Chancellor Kent says: That even though the factor may have accepted bills upon the faith of the consignment, and paid part of the freight; yet he can have no lien, unless the goods of the principal do, in fact, come to his hands; and for this, he cites the case in Term. Reports.
That case, when examined, will, we think, be found decisive of this:
*95 The judgment of the Court of King’s Bench, in that case, was affirmed in the House of Lords, by the unanimous advice of all the Judges. The Judge, in delivering the opinion of the Judges, observed, that the parties acted entirely upon the faith of the agreement between them; that they (the, bankrupts) should accept the bills drawn on them by the Stienes, and should indemnify themselves out of the produce of the sal'es; and that the transaction between them, with respect to the consignments, was as between principal and factor, and not as between vendor and vendee; that, therefore, Laudiman and Graham, (the factors,) could have no property in the cargo; and the right of stopping in transitu was out of the question, that never occurring but as between vendor and vendee. And for this he relied on the case of Wright v. Campbell, 4 Burr., 2050. That the bankrupts could have no lien in the case, as the special verdict found that the goods never got into their possession. That though they might have given their acceptance on the faith that these consignments would be made to them, yet still it was an execu-tory agreement, for the non-performance of which only a right of action accrued, but that no property in the goods was thereby vested in them.
In that case, the factors, Laudiman & Graham, who resided in London, had become liable for Stiene, the consignor and owner, who lived in Scotland, by acceptance made upon the faith of the consignments, to a large amount; and besides, there was a heavy balance due them on previous transactions, and they were without funds to meet it. They had been advised by letter of the shipment; had received the invoice and bill of *96 lading; and before the arrival of the vessel, Stiene, the consignor had gone to London and conversed with them as to the cargo, giving directions as to its sale, and had caused them to have it insured, the premiums being charged to him. After his departure, the vessel and cargo reached London, and they paid a part of the freight, and were urged by the captain, to at once unload the ship and receive the cargo; but having stopped payment, they delayed until it was taken under a writ of sequestration against Stiene, the consignor, who never paid the bills, which were proved as debts against the consignees. And yet it ayus held they had no lien and no property in the cargo.
Judge Story, in section 377 of his work on Agency, says: “If goods come to the possession of the factor after a secret act of bankruptcy committed by the principal, the factor will not be entitled to retain them against the assignees for advances or acceptances made after such act of bankruptcy, upon the faith of the consignment of the goods to him, although such act was unknown to him at the time of the advances or acceptances ; for the act of bankruptcy divests the property out of the bankrupt.”
And he says: “ Whether the like eifect would be produced Avhen the act of bankruptcy was committed after the advances or acceptances were made, and Avhile the goods AYere in transitu to the factor, is a point upon Avhich doubts have been entertained; but the Aveight of judicial opinion seems against the lien.”
But it is unnecessary for us, conclusively, to decide here, that the acceptances or liability on the part of the plaintiff, gave him no lien, and no special property in the *97 goods as against Henderson, because the Circuit Judge, in Ms charge to the jury, held the law upon that point to be for the plaintiff; and manifestly, if the lien existed at all, it could only be as to that transaction, and ceased upon the payment of the bills by Henderson. It could not be extended to the general balance remaining on account of previous dealings.
We do not think the Circuit Judge erred in charging the jury, that it lay upon the plaintiff to show he was under the liability for Henderson by these acceptances at the institution of his suit. How could he claim anything, or move the Court in his favor, unless he showed a lien; and could the lien exist if there was no liability? The bills were dishonored in August, 1856, and Henderson, who seems to be solvent, proves they were protested, and he paid them to the bank, but at what time, he does not say. The suit of the plaintiff was not brought till March, 1857. Prima faeie, at least, they were paid before the institution of the suit.
Judgment affirmed.