THE IRVING NATIONAL BANK OF NEW YORK, Plaintiff in Error,
    *v.* THOMAS EMERY'S SONS, Defendants in Error.

A transfer, by delivery, of a bill of lading, for a *bona fide* consideration
    paid, passes the title of the consignee to the property described, whether
    the bill is indorsed or not.

A., consigning goods to B., drew drafts on B., and attaching thereto the
    bills of lading, describing the property, sold the drafts to C.   B., having
    received the goods, applied the proceeds to his claims against the con-
    signor, and refused to accept the drafts.   *Held*, the title to the goods
    passed, by the transfer of the bill of lading, to C., and that B. was liable
    to him for the amount of the drafts.

On the 24th of March, 1869, G. M. Mirrielies, in New
York, drew a bill of exchange on defendants, a firm doing
business in Cincinnati, payable on demand to his order,
for $299, which he negotiated the same day with the plain-
tiff, who advanced the money; whereupon the drawer, as
collateral security, deposited with them a bill of lading,
signed by an agent of the "Atlantic Time Line," admit-
ting the shipment of three casks of stearine by Mirrielies,
to be delivered to the defendants in Cincinnati.   On the
26th of the same month, Mirriclies negotiated another bill
with the plaintiff, drawn on the defendants, and payable
to the order of the drawer for $1,092, to secure the pay-
ment of which he deposited a bill of lading of a similar
tenor to that already described, for the delivery of ten
casks of stearine to the defendants in Cincinnati.   These
drafts contained a memorandum on their face, that one
was drawn on account of three casks of stearine, and the
other of ten casks, and, with the bills of lading attached
to them, were forwarded to Cincinnati, where they were
severally presented to the defendants for payment, which
was refused.   The defendants, in due course, received the
several shipments of stearine named in the bills of lading,
and converted the same to their own use, claiming that

they were the factors only of Mirrielies, and had the right to apply the proceeds to the payment of a claim they professed to hold against him.

There had been previous consignments made to the defendants, by Mirrielies, who, it is admitted, then acted as their agent to purchase stearine in New York, with power to draw on them for the price; but it was claimed by the defendants that the property now in controversy was not received by them under the previous authority given to the shipper, while it is asserted by Mirrielies his agency never had been revoked, and the purchase was made in good faith, the defendants being duly advised of the fact.

Judgment was given at Special Term for defendants, which decision was sought to be reversed.

*J. H. Bates & Clement Bates*, for plaintiff in error.

1. The validity of a transfer of a bill of lading, without indorsement to pass title in goods, is well settled. *Allen* v. *Williams*, 12 Pick. 297; *Marine Bank of Chicago* v. *Wright*, 46 Barb. 45; *Rochester Bank* v. *Jones*, 4 Comst. 497.

2. Delivery to carrier named by consignee not conclusive. *Mitchell* v. *Ede*, 11 Ad. & El. 888; *Turner* v. *Trustees, etc.*, 6 E. L. & E. 597.

*King, Thompson & Avery*, contra.

1. When Mirrielies mailed the invoices to defendants and delivered the shipments to carriers named by them, the property in the goods *prima facie* passed to them. Chitty on Carriers, 97, 124; Benjamin on Sales, 130, 514, 658; 8 Term, 330; 3 B. & P. 582; 5 Ohio R. 100; 1 Gray, 542; 1 Johns. 214; 14 Wend. 546; 22 N. Y. 368.

2. The bills of lading in the case at bar were not negotiable by the shipper, because not made to him, or to order, or to bearer. *Stanton* v. *Eager*, 16 Pick. 467.

STORER J. This action is brought to recover the value of the property described in the bill of lading, and the

question is presented, what title did the plaintiff acquire by the deposit of the bills of lading when the drafts were negotiated?

Since the decision in *Lickbarrow* v. *Mason*, 2 T. R. 75, it has never been doubted that the transfer of a bill of lading by the consignor, as a general rule, transfers the property it describes, if made for value and in good faith; and although the presumption may well be that the consignor, by the shipment and the carrier's contract to deliver to the consignee, has parted with his claim as owner, the fact is not conclusive, but may yet be explained by the circumstances.

When the plaintiff purchased the drafts drawn by Mirrielies, and received from him the bills of lading, the transaction between the parties was not an idle ceremony. A legal or equitable claim to the property was vested by the act of delivery.

It was so held by Judge Washington, in *Walton* v. *Ross et al.*, 2 Wash. C. C. 283, that the indorsement and delivery of a bill of lading, or the delivery of the bill without indorsement, amounted to a transfer of the property.

The same point had been previously decided by Gibbs, C. J., in *Nathan* v. *Giles*, 5 Taunton, 558, whose language is: "The property in a cargo, for which the master of a ship had signed bills of lading, may be transferred by delivery without indorsement of the bill, and the transfer will be good against all the world, except subsequent indorsees for a valuable consideration." This was also the ruling in *Alton* v. *Williams*, 12 Pick. 302, where the court say: "The delivery of an informal or unindorsed bill of lading by the shipper would be a good symbolical delivery so as to vest the property in the plaintiffs." The same point was decided in *Bank of Rochester* v. *Jones*, 4 Comstock, 497; where the bank had loaned money, and to secure it "a forwarder's receipt was deposited by the borrower." The conclusions of the court in this case were adopted by Davis, C. J., in his opinion in *Rawle & Seymour*

v. *Deshler*, 3 Keyes (40 N. Y.) 577, to sustain two propositions: *First*, That the delivery to the bank of the carrier's receipt was a symbolical delivery of the property it described. *Second*, The delivery of the carrier's receipt or bill of lading to the bank, for a valuable consideration, passed to the bank the legal title to the property. See also 1 Parsons on Shipping, 140.

Upon principle, then, we are satisfied it is immaterial whether a formal transfer of the carrier's receipt, at the time it is deposited, is made by indorsement or not. Sufficient is it that it is voluntarily delivered in good faith to secure a discount at a bank, or the loan of money; and it is immaterial whether the court should consider the title derived by the party was legal or equitable. We must hold, then, that when the property in litigation was received by the defendants, it was subject to the right of the plaintiff to be paid its full value, whether it is regarded as owner, or the holder of a lien, to the extent of their advances.

The whole controversy is between the plaintiff and the defendants, and it is clear the defendants can not intervene with any claim against Mirrielies, who had parted with his interest at the time the bills were discounted by the bank in good faith, of all which the defendants must have been fully advised, as the drafts, when presented for payment, were accompanied by the bills of lading, and the drafts themselves purported to have been drawn against the purchase money of the property described in the bills. Moreover, the defendants insist by their answer, and one of them testifies, that the shipment to them was regarded as an ordinary consignment, and not as purchased for their benefit. They have thus placed themselves in this relation to the parties: receiving property which did not belong to the consignor, of which, as already remarked, they must have been advised; disposing of the same without authority from the plaintiffs, and withholding the

proceeds from them, on the ground that they have an un-settled claim against the consignor.

If this ingenious method of discharging a debt against one individual, by appropriating the property of another to its payment, should be sanctioned, it would introduce an anomaly hitherto not supposed to exist in the law or the ordinary dealing among merchants.

In any view the court may take of the case, the question might be asked: Who is entitled, " *ex aequo et bono*," to the proceeds of the property in dispute. It has been sold and so much money has been received to the use of some one. It can not certainly belong to Mirrielies, for he had parted with his entire right when the property was shipped. It can not be the property of the defendants, for they have no claim upon the plaintiffs which can authorize them to retain the money. The plaintiffs are, on every principle of equity, entitled to the protection of the court.

At Special Term, one of the judges of this court, on the facts before him, held the plaintiffs could not recover in this form of action; but on a full and more careful con-sideration of all the facts, all the members of the court are now of opinion that the plaintiffs made out their cause of action in Special Term.

The judgment should, therefore, be reversed.