If an agent indebted to his principal ships property to him on board a vessel belonging to a third person, (although bound to conform to the agent's orders) and the captain signs a bill of lading deliverable to the principal, the property thereupon vests in the principal, and the agent cannot countermand or disturb the shipment.

SUMMERIL *against* ELDER.

THIS was an action of replevin for two hogsheads of coffee, in which the defendant claimed property. It was tried at Nisi Prius in *February* 1804, before SHIPPEN C. J. and SMITH J. when a verdict was found for the defendant, subject to the opinion of the court upon a case which was in substance this: *Dawson* and *Watt*, merchants at *Cape Francois*, were the common agent of plaintiff and defendant, and were indebted to both at the time hereafter mentioned, for the proceeds of sundry cargoes consigned to them. *B. F. Garrigues* the owner of the brig *Julia* addressed her in the latter part of 1801 to *D. & W.* with a direction to the captain to conform in all respects to their orders. On the 23d *Jan.* 1802, *D. & W.* wrote to the defendant as follows: " This goes by way of *Baltimore* and is merely to " inform you that we shall ship for your account on board the " brig *Julia, Samuel Holt* master, sailing for your port on or " about the 1st next month the quantity of 7000 lbs. coffee

" or thereabouts.* By her we shall write you more fully, and " remain your assured friends *D.* and *W.*\* It being your pro- " portion of the balance of the brig Agnes' cargo. *D.* and *W.*" On the 31st *January* 1802, the captain having taken on board his cargo for *Philadelphia*, signed bills of lading for eight hogsheads and nine barrels of coffee marked T E, deliverable to the *defendant* or his assigns, one of which bills *D.* and *W.* left with the captain together with letters for the consignees. The brig was detained until the 4th of *February* when *Cape Francois* was burned by the blacks, and property to a great amount in the stores of *D.* and *W.* destroyed. On the 10th *February* *D.* and *W.* prevailed upon the captain to deliver up the bills of lading and letters; and with a view to equalize the loss among their different employers, took two hogsheads from the quantity shipped for the defendant, and addressed them to the plaintiff, presenting at the same time bills for the signature of the captain, varied accordingly from the former bills. The captain at first refused to sign, as an alteration had been made in the quantity shipped to his owner, but was compelled to it by the assurance of *D.* and *W.* that until it was done the brig should not sail. From the 31st *January* to the 10th *February* the vessel remained in the harbour under her first bills of lading, her bulk never broken, nor the marks of the hogsheads or barrels in any way altered. On the 4th of *March* after an embargo the brig sailed, and on her arrival, the captain being informed by the defendant that according to a letter from *D.* and *W.* the quantity due by the bill of lading last signed fell short of the amount shipped, by two hogsheads, put the property in question on shore, when the defendant got possession. The plaintiff entered and secured the duties upon them, and then brought the present action.

Upon these facts *M. Levy* for the plaintiff argued that the common factor of both parties had a right to alter the destination in this case; that the captain was the agent of *Dawson* and *Watt* since he was tied down in all respects to their orders; and that the delivery of the property and bill of lading to him was a revocable act, since it might be considered as a delivery to themselves; and that the most to which the letter and first bill of lading amounted, was a promise of a bill of lading, which however it might affect the contracting parties, passed no pro-

1804.

SUMMERIL
*v.*
ELDER.

perty. The interference by the agents was to equalize a severe loss among many, before the means of so doing had gone out of their hands.

*Rawle* for the defendant answered that the coffee was shipped from the funds of *Elder* in the hands of *Dawson* and *Watt;* that the property vested by the delivery to the captain, that it was at the defendant's risk from the 31st *January* to the 10th *February*, and that the interference of *Dawson* and *Watt* was to make *Elder* contribute to *Summeril's* loss, which they had no right to do. A bill of lading clearly vests the property in him in whose favour it is made and for whose use it is delivered, *Evans* v. *Marlett*, (a) and the captain became the agent of *Elder* as to this property the moment the bill was delivered. How then could the general agents of *Elder* devest the property? They could do it only in the character of agents, or under the common power of stopping in transitu. As agents their authority was supplanted by that of another agent upon the delivery of the bill of lading. As to stopping in transitu this case never occurs but as between vendor and vendee, and as between them the vendor can stop in transitu only when the vendee has become bankrupt, or when no consideration has passed from the vendee to him. *Snee* v. *Prescott*, (b) *Wright et al.* v. *Campbell*, (c) *Lickbarrow* v. *Mason*, (d) *Ellis and others* v. *Hunt*, (e) *Kinloch* v. *Craig*, (f) *Sweet* v. *Pym*, (g) *Alderson* v. *Temple*. (h)

*Levy* in reply said that none of the cases cited came up to this, which was a delivery to the factor's own ship; and that although a bill of lading did usually vest the property, yet for the sake of doing complete justice it was construed otherwise in the case of stopping in transitu. Justice here very clearly supported the plaintiff's claim.

SHIPPEN C. J. Even granting that the parties in this case have equal equity, still he that has the law must prevail. Now there can be nothing more clear than that upon the delivery of the bill of lading to the captain upon the 31st of *January*, the

(a) 1 *L. Ray*. 271.      (d) 2 *D. & E.* 63.      (g) 1 *East* 4.
(b) 1 *Atk.* 245.         (e) 3 *D. & E.* 466.     (h) 4 *Burr.* 2239.
(c) 4 *Burr.* 2046.       (f) 3 *D. & E.* 119.

property vested in the defendant, it continued at his risk from that time to the 10th *February*, and had it been lost he and not *Dawson* and *Watt* would have been the sufferers. After having so vested, there was no authority in the agents to change the rights of the parties. The opinion of the court is that there must be

1804.

SUMMERIL<br>v.<br>ELDER.

Judgment for defendant.