CLARK *vs.* MAURAN and others.

H. a merchant, residing at Providence, R. I. was indebted to M. who was in business in New-York. Upon being applied to by M. for payment, H. informed M. that he had ordered the balance of his funds in the West-Indies to be forwarded to him, and directed him to place those funds to his credit, on account, when received. The agents of H. in the West-Indies shipped the funds, consisting of a quantity of doubloons, on board of a general ship, consigned to M. at New-York ; and forwarded to him the bill of lading, in which bill the doubloons were stated to be for the account and at the risk of H. Previous to the arrival of the ship at New-York, H. failed, and assigned all his property to trustees, for the benefit of certain other creditors ; and upon the arrival of the vessel at New-York, both M. and the assignees claimed the doubloons. On a bill of interpleader, filed by the master of the ship ; *Held,* that under the circumstances of this case, M. had obtained a specific lien, upon the doubloons, for the payment of his debt ; which lien was not affected by the general assignment of H. for the benefit of other creditors.

The right of stoppage in transitu does not apply to the case of a consignment from a debtor to his creditor, where there can be no risk of loss by the insolvency of the consignee.

THIS was an appeal from the decree of the late vice chancellor of the first circuit. The decree was founded upon a bill of interpleader, filed by the master of the brig General Paez, to compel the defendants to litigate and settle their conflicting claims to fifty Spanish doubloons, shipped on board his vessel at Curacoa. The facts, as agreed upon by the parties, were as follows : Previous to June, 1829, Hodges, a shipping merchant of Providence, R. I. had extensive commercial dealings with the defendant Mauran ; and about the sixth of that month was indebted to him in an amount exceeding $7000. On that day Mauran drew upon Hodges for a small portion of the balance due, and at the same time urged the payment of the residue. Upon the 10th of June Hodges wrote to A. D. Meza & Sons, his agents in Curacoa, directing them to close the sales of his goods remaining in their hands, and to ship the balance of his funds by the first vessel bound for New-York, Boston, or to any other port near Providence ; and if shipped to New-York, that they be consigned to Mauran, and be remitted in doubloons, or any other funds that would do as well. On

the 17th of June Hodges wrote to Mauran, complaining of the difficulty in raising money, but expressing a hope that he should soon be able to place funds in his hands to balance the account. He added in a postscript, "I have ordered the balance of my funds at Curacoa to be forwarded to you, which when you receive you will please to place to my credit in account." On the 14th of July A. D. Meza & Sons shipped on board the complainant's brig, at Curacoa, the doubloons in question, consigned to Mauran or his assigns at New-York; which shipment was stated in the bill of lading to be for account and risk of Hodges. The same day they enclosed the bill of lading to Mauran in a letter, informing him that the consignment was thus made by the direction of Hodges, and for his account and risk. On the 16th of July Hodges failed; and he made a general assignment of all his property and effects to the defendants Kelly & Cole. Upon the arrival of the brig at New-York, on the 3d of August, 1829, Mauran received the bill of lading, and entered the doubloons at the custom house. The same day the agent of Kelly & Cole presented to the complainant their assignment, and demanded the doubloons, as their property. It was admitted that the bill of interpleader was properly filed; and the complainant was permitted to retain his costs and expenses out of the fund in his hands. The vice chancellor decided that the doubloons belonged to Mauran; and decreed that they be delivered to him, and that he recover his costs against the other defendants, and also the taxable costs of the complainant which had been thus retained out of the fund. From this decree the defendants Kelly & Cole appealed to the Chancellor.

*P. V. Remsen & J. Tallmadge,* for the appellants Kelly & Cole. The right to receive the proceeds of a cargo does not create a lien on the cargo until possession is taken. If a trader ships goods in his own name, his factor acquires no lien until he obtains possession. (2 *Wash. C. C.* 294. *Hibbert* v. *Carter,* 1 *T. R.* 745. *Montagu on Liens,* 5. *Walter and others* v. *Ross and others,* 2 *Wash. C. C.* 283.) If a shipment is at the risk of the shipper, nothing passes to the consignee until he obtains possession. (*Kinlock* v. *Craig,* 3 *T. R.* 119. 3 *Id.* 783. 1

*Esp. Rep.* 240. *Atkin* v. *Barwick,* 1 *Strange's R.* 165. *Wright* v. *Campbell,* 4 *Bur. Rep.* 2051.) The property in the doubloons in question was in Hodges at the time of his transfer to Kelly & Cole, and Mauran could not have claimed them on that day. If Mauran had a lien on the doubloons he should have assumed the risk of the shipment. If the shipment was at the risk of Hodges, Mauran had no lien. Wherever the debtor runs the risk of a shipment, the creditor to whom the goods are consigned has no lien on the goods before he receives them ; and an assignment by the debtor after the shipment, and before the goods come into the possession of the creditor, will prevail. Where the proceeds of a cargo only are appropriated to the payment of a creditor's debt, the property in the cargo does not pass to the creditor. (*Huntley* v. *Ledyard,* 1 *Starkie's Rep.* 99. 1 *Binney,* 106. *Godfrey* v. *Furzo,* 3 *Pr. Wms.* 185. *Fritz* v. *Lawrence,* 1 *Paige's Rep.* 442. *Case of the Gilboa,* 4 *Rob. Adm. Rep.* 79. *Barker* v. *Havens,* 17 *John. Rep.* 234. *Porter* v. *Lansing,* 1 *Id.* 215. *Conard* v. *Atlantic Ins. Co.* 1 *Peter's U. S. Rep.* 445.) The right of property is in the person at whose risk the goods are shipped. Here the question is one of strict right. It is a contest between bona fide creditors. The goods were shipped at the risk of Hodges. Mauran's rights could only have commenced with the possession. The goods were neither shipped on his account, or at his risk. Here was only an intent to have the goods delivered to Mauran. In all such cases the owner can stop the goods in transitu. (*Haille* v. *Smith,* 1 *Bos. & Pul.* 563. *Abbott on Ship.* 389. *Walter* v. *Ross,* 2 *Wash. C. C. Rep.* 298.)

*C. Walker,* for Mauran. A shipment of goods by a debtor consigned to his creditor, accompanied by a bill of lading, to be applied in payment of a debt due such creditor, vests the property in the goods so consigned in the creditor, and the shipment cannot be countermanded by the debtor. (1 *Ld. Raym.* 271. *Hibbert* v. *Carter,* 1 *Term. Rep.* 745. 1 *Binney,* 106. 1 *Yeates,* 177. *Allen* v. *Watson,* 4 *Campb. Rep.* 325. *Alderson* v. *Temple,* 4 *Burr.* 2236. *Sweet* v. *Pym,* 1 *East,* 4. 1 *Strange,* 165. *Rybergh* v. *Snell,* 2 *Wash. U. S. C. C. R.* 294. *Walter* v. *Ross,* 2 *Id.* 288.) The delivery of the bill of lading

to the master of the ship is a delivery to the creditor. (*Summerille* v. *Elder*, 1 *Bin.* 106. *Buffington* v. *Curtis*, 15 *Mass. Rep.* 533. 4 *Burr.* 2236.) If the goods should be shipped on the account and at the risk of the debtor, it would not prevent the property vesting in the consignee. (*Haille* v. *Smith*, 1 *Bos. & Pul.* 563. *Locke* v. *North American Ins. Co.*, 13 *Mass. Rep.* 61.)

THE CHANCELLOR. The general question as to the right of a consignor to stop goods in transitu does not arise in this case. In the cases in which that question arises, the claim of the seller or consignor is founded on the supposition that he has parted with the legal interest in the property ; but that under the circumstances he has an equitable claim to revest the property in himself, or at least to prevent its going into the actual possession of the consignee until the price is paid. (*Per Buller, J.,* 6 *East's Rep.* 27, *n.*) The right of the consignor to stop in transitu is limited to the case of the insolvency of the consignee, and where the goods have not been paid for. Consequently it can never apply to a consignment to a creditor to whom the consignor is indebted in the full value of the goods.

In the case of *Evans* v. *Martlet*, (1 *Ld. Raym. Rep.* 271,) it was held that, upon a general bill of lading consigning the property to A., the legal title was in him, although it appeared from the invoice that the goods were consigned on account of another person. (*See also* 2 *Term Rep.* 74, 75.) But in the case under consideration, it appeared on the face of the bill of lading, that the goods, although consigned to Mauran, were for account and at the risk of Hodges. It is probable, therefore, that an assignee of that bill from Mauran would have taken it subject to any equitable rights which existed in Hodges, or in third persons deriving an interest under him. In the case of *Walker* v. *Ross*, (2 *Wash. C. C. Rep.* 283,) the bill of lading was like the present. A quantity of flour was laden on board a general ship, and the master signed three bills of lading, by which the flour was to be delivered to the plaintiffs or their assigns ; but the bill expressed that the consignment was shipped on account of and at the risk of the shippers. A

day or two after the shipment, and before any invoice, bill of lading, or letter of advice, had been sent to the consignees, the shippers finding they must stop payment, re-sold the property to the defendants, of whom it had been previously purchased on a credit. It appeared that the shippers were indebted to the consignees, and intended that the latter should apply the net proceeds on account. That intention however had not been communicated to them, and the consignment had not been made at their request. Under those circumstances, Judge Washington decided that the consignees had no vested interest in the flour, and that the owners had a right to countermand the order at any time before the property was actually received by the plaintiffs. But there is a material difference between that case and the present. Here, by the letter of the 17th of June, 1829, Hodges had given Mauran notice of his intention to make this consignment for the purpose of paying the balance due to him on account. And, as that letter was in answer to an application from him for payment, it may be fairly presumed Mauran acted upon the faith of that letter, and neglected to press his demands to the extent he would otherwise have done. The consignment by A. D. Meza & Sons was made in conformity to their instructions previously received from Hodges. It was therefore a specific appropriation of this property, for the payment of the balance due to their agent, as soon as the doubloons were shipped on board the brig and the bill of lading delivered to the master to be transmitted to the consignee. In deciding upon the rights of the parties in this cause, the authorized acts of the agents of Hodges at Curacoa must be taken to have the same effect as if those acts had been performed by Hodges in person. In the case before alluded to, Judge Washington admits that even a letter of advice, stating a shipment to be to a particular person, where the consideration is paid, may give to the consignee an equitable title, sufficient to repel the right of the consignee to countermand. And in *Summerville* v. *Elder*, (1 *Bin. Rep.* 106,) where the consignor had advised his principal to his intention to make a shipment, and he afterwards put the goods on board a general ship and delivered the bill of lading to the master to be transmitted to the consignee, the su-

1832.

Clark
v.
Mauran.

preme court of Pennsylvania decided that the right to the property was vested in the consignee; and that the shipper could not countermand the order, although the vessel had not left her port of lading. In *Haille* v. *Smith*, (1 *Bos. & Pul.* 571,) Eyre, Ch. J. also held that the circumstance of the risk of the shipment remaining in the consignor was no objection to the claim of the consignee. The case of *Hastie & Jamieson* v. *Arthur*, (2 *Bell's Comm.* 199, *n*. 2,) appears to bear a very strong analogy to the one now under consideration. In 1765, Dunlop, of Virginia, consigned a shipment of tobacco to Hastie & Jamieson, to be sold and the proceeds to be applied in payment of the price of goods due to them from Dunlop. The ship arrived at its port of destination in Scotland; but before the consignee had obtained possession of the cargo, it was arrested by the creditors of Dunlop. The lord ordinary and court of sessions decided that Dunlop was not divested of the property, in favor of Hastie & Jamieson, and that the same was liable to the diligence of the arresting creditors. But upon appeal to the house of lords, the judgment was reversed; and it was declared that Hastie & Jamieson had a special property in the cargo preferable to the arrestment of the other creditors. The conclusion at which I have arrived, therefore, is, that by the shipment of the doubloons to Mauran, by the direction of Hodges, and the delivery of the bill of lading to the master of the brig, under the circumstances of this case, the consignee obtained a specific lien upon the property, which was not divested by the general assignment of Hodges to the appellants.

The decree of the vice chancellor must therefore be affirmed, with costs.