CLARKE (SMITH v.). See Case No. 13,028.

---

## Case No. 2,863.

### CLARKE v. SOUTHWICK.

[1 Curt. 297.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1852.

EQUITABLE LIENS—ENFORCEMENT—PRIVIES—LIMITATION.

1. Certain mill-owners having, by articles of agreement, associated themselves for the purpose of constructing reservoirs, &c., to improve the flow of the stream, and agreed that there should be a lien on their respective estates for the share of the expenses which each was to pay: *Held*, that this agreement was an equitable lien, which each member who had paid more than his proportion might enforce, without joining the others; and that the defendant, having purchased certain of the mills, with notice of the lien, after the debts were incurred by the association, took the estates cum onere.

[Cited in The Young Mechanic, Case No. 18,-180; Lawrence v. Dana, Id. 8,136.]

2. Such a lien is not barred by lapse of less time than is sufficient, by the local law, to bar a suit for the foreclosure of a legal mortgage.

[In equity. Bill by Edward Clarke against James C. Southwick.]

CURTIS, Circuit Justice. This is a bill in equity, to establish and enforce a lien on certain mills, lands, and their appurtenances, belonging to the defendant. The facts upon which the lien is asserted are, that on the fifteenth day of April, 1837, articles of agreement, under seal, were entered into by certain persons who owned mills upon a stream of water in the town of Sutton, in the coun-

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

ty of Worcester, the object of which was to associate themselves, under the name of the Sutton Water-Power Company, for the purpose of creating reservoirs of water, to render the stream, by which their mills were driven, more constant and full, for their common benefit; that the proprietors of six different mills were parties to this agreement; that they thereby agreed, among other things, that there should be a lien on their respective estates, to secure the faithful performance, by each to the other, of the covenants contained in the articles. Among these covenants was one, that the associates would pay all debts incurred in creating and managing this water power, in the proportions specified, one-sixth part thereof being chargeable to each of the six mills. The complainant was a member of this association, as one out of three owners of one of the mills; and two days after the execution of the articles, he became, by purchase from his co-tenants, sole owner thereof. The articles contained a provision, that, if either of the mills should be sold, the purchaser might become a member of the association. Three of the mills were conveyed, after the execution of the articles, to the Sutton Woollen Mills, a manufacturing corporation, which became a member of the association; and, while thus a member, and through its action as such, large expenses were incurred in the purchase of lands, the erection of a dam, and liabilities for land damages, from a flowage, which, though in part paid by the association, through regular contributions for that purpose, was mostly left unpaid; and the complainant, as one of the members of the association, has been obliged to pay the residue; and he now seeks, by this bill, to charge upon three of the mills, formerly owned by the Sutton Woollen Mills, but now owned by the respondent, three sixths of what he has thus paid, being the proportions stipulated by the original agreement to be borne by the owners of those mills.

The first question made at the bar is, whether the articles created a lien on the real estate. Of this, I have no doubt. The parties covenant, each with the other, for the payment of all debts incurred in the execution of their common object; and then go on to bind, not only themselves, but "his and their respective estates hereinafter mentioned," to the faithful performance of all the provisions of the instrument; and after describing each estate, and the contributory share to be borne by it, they use this language: "Meaning and intending hereby to create a lien upon, and to bind our said estates, so far as we may. either in law or equity, do the same," &c. Whenever the owner of real property agrees, in writing, for a valuable consideration, that a lien for a debt or duty shall exist on that property, in the view of a court of equity, it does exist. Such an agreement is not executory merely, but so

far as respects the parties, and those claiming under them as volunteers, or with notice, it is executed; it creates a trust, which this court will enforce, and by means of it, work out, according to its modes of proceeding, the payment of the debt, or the performance of the duty, which the parties have manifested their intention to have thus secured. The authorities in support of this position are numerous. I will refer to some, in which the principles upon which this position rests, are most clearly stated. In Legard v. Hodges, 1 Ves. Jr. 477, Lord Loughborough said: "I take the maxim to be universal, that wherever persons agree concerning any particular subject, in a court of equity, as against the party himself, or any claiming under him voluntarily, or with notice, a trust is raised." In Collyer v. Fallon, 1 Turn. & R. 469, the principle is laid down: "Contract, with respect to a given matter, binds the property, as between the parties to the contract, and all claiming under them, with notice." And in the recent case of Malcolm v. Scott, 3 Hare, 39, 46, 52, it is taken to be clear, that when you make out an agreement to give a lien, the lien exists. Upon this principle, Burn v. Carvalho, 4 Mylne & C. 702; Hankey v. Vernon, 2 Cox, Ch. 12; Clark v. Mauran, 3 Paige, 373; Parker v. Muggridge [Case No. 10,743]; and many cases in bankruptcy, from 1 Glyn & J. 13 to 2 Mont. & A. 224,—have been decided.

My opinion is, that the articles of agreement now in question, which in express terms declared that there was to be a lien on these estates, created an equitable lien, capable of being enforced through the power of this court.

The next question is, whether this lien is capable of being enforced at the instance of the plaintiff. It is argued, that only the association or company has this lien. This depends on the intent of the parties, manifested in the instrument; and I do not so construe it. The lien accompanies the covenant, and is intended to secure its performance. The covenant. that each will pay his proportion of the debts, is a several covenant by each with each member. Its language is, "and the members of the said company, each for himself respectively, &c., does covenant, promise, and agree, each with the other, &c., for the due and faithful execution," &c. Whatever several rights the plaintiff has, are, therefore, intended to be secured, and, in a court of equity, are secured by the lien, which is coextensive with the obligation of the covenant, and binds the lands, as that obligation bound the parties to it. It has been argued, that the members were not liable inter sese until after an assessment made; but there is nothing in the instrument on which to rest this position. The covenant by each to discharge and pay his stipulated proportion of all debts, is absolute and unqualified. The

words "assessed" and "assessment" do occur in the instrument, but only as synonymous with share or proportion; and there is nowhere any provision calling for any formal act of assessment as a condition precedent to the right of each member to have every other member pay his stipulated part of the expenses of the association. It is true these debts were contracted while the Sutton Woollen Mills owned the three estates in question; and that corporation was not originally a member of the association, and did not execute the articles. But the articles contained a provision that any purchaser of either of these mills might become a member of the association, and the bill avers that this corporation did become a member. This averment of the bill is admitted to be true. Indeed, the very debts which the plaintiff has paid were contracted by that corporation as a member of the association. I am inclined to think that a purchaser of one of these mills, though he took his estate incumbered by the lien to secure the performance of this covenant, might exempt it from the charge for future debts by refusing to become a member of the association; but if he became a member, and actually participated in creating debts, I think the lien extended to his share of them. When he takes the title, it is charged with a lien, to secure the payment of the just contributory share of expenses which have been or shall be incurred, for the common benefit of that and five other estates. So far as expenses have then been incurred, they are clearly a charge on the land. Independent of any stipulation in the articles giving the purchaser a right to withdraw, and refuse to participate in future expenditures, it would be difficult to show that the estate would not be bound for them, even if he did not expressly consent to what was done. There are cases, in which, without any actual contract, equity will compel the owner of property to contribute to the cost of a work erected by another for their common benefit, as in case of a party wall. Campbell v. Mesier, 4 Johns. Ch. 334. This principle has never been extended to works designed to improve the flow of a stream, for the advantage of all the mills upon it, and there are sufficient reasons why it should not be so applied; but I know of no reason why the owners should not make a contract, not only to build, but preserve and manage reservoirs and other works for the common benefit of their respective mills, and charge the expenses thereof, permanently, on their respective estates, so that any purchaser would take his title cum onere, and be liable to pay the share belonging to his mill, even if he expressly dissented from the expenditure. As already intimated, I do not consider these articles were intended to bind the estate of any purchaser for expenses incurred after the purchase, against his will; but I see no difficulty in holding

that the lien, which existed on these three mills when the original members of the association sold them, secured not only the payment of what there had been, but of what thereafter should be, expended, with the assent of the purchaser. It is true, that a purchase for a valuable consideration, and without notice, would take the estate discharged of the lien; but the bill avers notice to all the purchasers, including the defendant, and this averment is admitted to be true. My opinion is, that the Sutton Woollen Mills took these estates, charged with a lien for three sixths of the expenditures which had then been made pursuant to the articles, or which should thereafter be made with its assent; and that this lien was capable of being enforced by any member of the association.

It is urged, however, that this bill is defective, because the plaintiff has not joined the other members of the association. But they have no interest in this suit, the object of which is to charge on the defendant's estates, their contributory share. I am aware that formerly the rule was, that in a bill for contribution, all those liable to contribute must be joined, upon the hypothesis that each might assist the others in the taking of the account; but this rule has been found so inconvenient, and so little beneficial in practice, that, by an order made in 1841, it has been abrogated in England (1 Daniell, Ch. Pr. 331); and under the fifty-third rule for the practice of this court, I can have no doubt, that it is my duty to make a decree in the absence of those parties, as their joinder would defeat the jurisdiction, and a decree can be made without affecting their interests. If there was any property of this association capable of being applied, and which, equitably, ought to be applied in payment of its debts, before resorting to the lien asserted by the bill, all the members would be necessary parties, because they would then have an interest, both in the account of the debts and of the property, and in its application. But there is no such property. The works which the association has erected for the improvement of these mills, cannot be sold without defeating the very object for which the association was formed. Every member has a right to have them preserved, and to have every other member pay his contributory share, in order that they may be preserved. So far from these works constituting a fund to be resorted to in relief of the contributors, they are the very object of the contribution, and equity requires it to be made in order that the original purposes of the parties may be fulfilled. It is objected that the defendant may hereafter, by other suits, have other debts of the association charged on his estates, so that he is exposed to pay more than his just share, and thus be forced to seek for contribution himself, in another suit. If this were so, it would be a fatal objection;

but the defendant not being a member of the association, and so not being personally liable, can never be forced to pay any more than three sixths of any debt, and so can never have any claim for contribution; for this proportion is what is justly and ultimately chargeable on his estates.

These are all the objections growing out of the supposed defect of parties, which have been assigned at the bar, and, in my opinion, they are not tenable.

The defendant insists that this is a stale claim; that the plaintiff has been guilty of such laches that this court will not lend its aid to enforce the lien. He relies on the doctrines of courts of admiralty respecting maritime liens, and several decisions on that subject were cited. But there is no occasion to resort to analogies drawn from another branch of jurisprudence, because equity has its own settled rules and principles which govern the case. First of all, equity protects bona fide purchasers without notice. Against such a purchaser it does not enforce such a lien. This leaves for consideration, only the rights of the party creating the lien, and those who succeed to those rights. As against them, an equitable mortgage is like a technical legal mortgage. If there be a statute of limitations, barring the rights of a legal mortgagee after the lapse of a certain time, equity will follow the law, and hold the same time a bar to a bill to foreclose an equitable mortgage. But it will not distinguish between an equitable and a legal mortgage in this particular. Hughes v. Edwards, 9 Wheat. [22 U. S.] 494; Lingan v. Henderson, 1 Bland, 282; Moreton v. Harrison, Id. 491; Sheratz v. Nicodemus, 7 Yerg. 9. The fact, that the action at law for the debt, is barred by the statute is not material in equity, as it is not at law. Thayer v. Mann, 19 Pick. 535; Baldwin v. Norton, 2 Conn. 163. Keeping these principles in view, it is plain that the court cannot refuse relief in this case, either by reason of the statute of limitations, or upon the ground of laches. By the law of Massachusetts, twenty years adverse possession bars an action at law to foreclose a mortgage. Less than twenty years is not sufficient to afford a positive bar to a bill to foreclose an equitable mortgage, on land in that state. Neither is this a case in which laches can be imputed to the plaintiff. He paid these moneys from time to time, between 1839 and 1843, and in 1843 he brought a suit in the state court to enforce this lien. The suit failed, for want of a sufficient equity jurisdiction, in October, 1847, and in April, 1848, this bill was filed. Whatever might be said of this, if the plaintiff were seeking to call into action the discretionary authority, which this court exercises to give relief concurrently with courts of law, as in bills for the specific performance or rescission of contracts, there can be no pretence for saying, that this lapse of time has affected the right

of a creditor, to obtain payment of his debt, through an equitable mortgage on land. Nothing short of such time and circumstances as raise a presumption of payment can avail the debtor, or discharge the land.

A decree is to be entered, referring the cause to a master to state an account, with directions to ascertain what debts of the association have been paid by the plaintiff, in full, and what in part only, if any, and also what debts of the association have been paid in full by the owners of the three estates held by the defendant, and what in part only, and let the report show when all such debts were contracted and paid.