# Schmertz & Blakely *versus* Dwyer.

1. A merchant in Bahia ordered goods from merchants in Pittsburgh, with instructions to send them "by first opportunity by vessel, either to this direct or via Pernambuco or then to Rio Janeiro." The goods were shipped by the vendors from Pittsburgh to New York, with instructions to ship them to Bahia. *Held*, that the property passed to the vendee on their shipment from Pittsburgh.

2. The vendors gave no instructions as to shipment via Pernambuco, &c., and the consignees finding no vessel to Bahia, after some months the vendors ordered the sale of the goods and received the proceeds. *Held*, that the sale was illegal.

3. The court charged that the measure of damages was the price of the goods at Bahia when they should have arrived there, less the invoice price, expenses, costs and charges of transportation. *Held*, that this instruction was correct.

In the Court of Common Pleas of *Allegheny county*, to which the writ of error was issued, this case was an action of assumpsit, brought February 4th 1864, by James Dwyer against R. C. Schmertz and James Blakely, trading as Schmertz & Blakely.

On the 15th of July 1862, Dwyer, the plaintiff, residing in Bahia, Brazil, wrote to Fulton & Co. a letter, of which the following extracts are the material parts:—

"Gentlemen:—Having been recommended to me by our mutual friend, Mr. Wilson, the American consul, I take the liberty of sending you an order hereby for an assortment of lamps and oil to the

[Schmertz *v.* Dwyer.]

amount of $1000, which you will please to send by first opportunity by first sailing vessel, either to this direct, or *via* Pernambuco (if possible in preference) or then to Rio Janeiro."   *   *   *   *

"For the amount of invoice you will please draw on Messrs. J. & D. Benoliel & Co., of London, 39 Mincing Lane, or upon Messrs. Cabbo & Co., of Rio Janeiro, or on myself—all upon shipping documents at 30 days' sight, if on Brazil; if on London, customary."

This letter reached Fulton & Co. under cover from Mr. Wilson, who, at the same time, wrote to them:—

"Ship through H. H. Swift & Co., 80 South street, New York, by the first vessel, either to this port or to Pernambuco or Rio Janeiro. If to either of the latter places, have the goods reshipped to this port by the Brazilian steamer."

Fulton & Co., not being in the business themselves, bought for the plaintiff from the defendants, a quantity of oil, &c., in accordance with the directions contained in plaintiff's letter. On the 29th of September 1862, the defendants wrote to plaintiff:—

"Dear Sir:—We have shipped you, per order of Messrs. Fulton & Co., this day, the following:

155 boxes Refined Oil,<br>
21   "   Lamps,<br>
4   "   Chimneys, &c.,

as per enclosed invoice. The original invoice will be attached to draft on J. & D. Benoliel & Co., London, on whom Messrs. Fulton & Co. have drawn in our favor at 60 days. We will send you all the bills of lading, duplicates, original being attached to draft, so soon as we get them.

"Hoping that this, our first transaction, may be approved by you, and that we may hear from you again *direct*, not through third parties, we remain."

Accompanying this letter was an invoice of the goods sent, amounting to $1029.69.

This letter with the invoice was received in due course of mail by the plaintiff. The goods were consigned by the defendants (for the purpose of shipping to the plaintiff) to H. H. Swift & Co., New York, with instructions to ship them to the plaintiff at Bahia, but not giving them the other instructions as to shipment, contained in the letter to Fulton & Co. Transportation for that amount of goods direct to Bahia could not be obtained at New York, and the consignees so advised the defendants; after two or three months, the defendants, without advice to the plaintiff, ordered the goods to be sold, which was done, and the proceeds

[Schmertz *v.* Dwyer.]

remitted to the defendants, the goods having in the mean time greatly advanced in value.

Both parties submitted points to the court below. The opinion of the Supreme Court makes it unnecessary to give any other than the 1st, 2d, 4th, and 5th points of the plaintiff, which were :—

1. Immediately upon the shipment at and from Pittsburgh of the oil and lamps in question, by the defendants to the plaintiff at Bahia, Brazil, upon the plaintiff's order, the right of property in said goods and chattels passed to and vested in the plaintiff.

2. If the jury believe from the evidence, that the defendants, without the consent or knowledge of the plaintiff, and without first advising with him in relation thereto, directed and procured the sale of said goods and chattels whilst the same were "*in transitu*" and at the city of New York, such sale was illegal and the defendants are answerable therefor in this action to the plaintiff.

4. The damages recoverable by the plaintiff are to be measured by the market price of said goods at Bahia, Brazil, at the time when they should have arrived there ; and the plaintiff is entitled to recover such price, less the invoice price and expenses, costs and charges of transportation from Pittsburgh to the plaintiff at Bahia, and until delivery to the plaintiff.

5. The testimony of Thomas F. Wilson, United States consul at Bahia, showing the price of oil and lamps at said place in the spring of 1862, and during the succeeding eighteen months, and that such price was uniform during all that time, if believed by the jury, will furnish the proper standard by which to assess the plaintiff's damages ; and the same are to be assessed in accordance with the principles laid down in the 4th point.

All these points were affirmed by the court (Sterrett, P. J.).

There was a verdict for the plaintiff for $900. The affirmance of these points, with other things, was assigned for error.

*Kerr* and *Kirkpatrick & Mellon*, for plaintiffs in error.—By the terms of the order from the plaintiff, H. H. Swift & Co. were made his agents to receive the goods from Fulton & Co., at New York, and ship them to him ; and, therefore, this arrangement fixed the circumstances and place of delivery, which was New York. The conditions on which the plaintiff agreed to pay were, that Swift & Co. shipped them to Bahia, and received a bill of lading therefor to attach to the bill of exchange. The goods, therefore, did not become the property of the plaintiff till they were shipped by Swift & Co.

Swift & Co. were the agents of the plaintiff, who was bound by their acts, and when they notified the defendants that they could not ship the goods, the defendants might do as they pleased with

3 P. F. Smith—22

them: Morberger *v.* Hackenberg, 13 S. & R. 26; Walter *v.* Ross, 2 W. C. C. R. 283.

*Hamilton & Acheson*, for defendant in error.—Immediately on the shipment of the goods from Pittsburgh they were the plaintiff's, and at his risk: Story on Sales, § 306; Hilliard on Sales 102, *et seq.*; Angell on Carriers, § 497; Summeril *v.* Elder, 1 Binn. 106. The defendants were bound to show a clear necessity for a sale, as in case of a shipmaster: Abbott on Shipping 367.

This was an illegal sale of goods *in transitu*, and the instructions as to the measure ·of damages were in accordance with the rule in Eby *v.* Schumacher, 5 Casey 40; and are sustained also by Watkinson *v.* Laughton, 8 Johns. 213; Gillingham *v.* Dempsey, 12 S. & R. 183; Warden *v.* Greer, 6 Watts 424; Angell on Carriers, § 482, *et seq.*; Hilliard on Sales ·337; Story on Sales, §§ 412, 449; Sedgwick on Measure of Damages 356.

The opinion of the court was delivered, January 7th 1867, by

THOMPSON, J.—The court below committed no error in assenting to the plaintiff's 1st point, in which the law was stated to be that upon the shipment by the defendants, at and from Pittsburgh to the plaintiff at Bahia, Brazil, of oil and lamps as *per* his order, that the goods thereupon passed to and vested in the plaintiff. That this was fully expected and intended by the defendants themselves, is very apparent from their advices and accompanying bill forwarded to the plaintiff under date of September 29th 1862, in the former of which they say, " We have shipped you per order of Messrs. Fulton & Co., this day, the following;" then follows a list of the goods. This letter with a bill or invoice, was in course of mail received by the plaintiff, who daily expected and looked for the goods for months—but they never came. It is very clear that the consignment and bill forwarded, fully invested the plaintiff with title to the property, and that, therefore, the goods were to be at his risk and expense: 1 Binn. 106; 12 S. & R. 183; 1 Str. 1701; Story on Sales, § 306; Angell on Car., § 497; Smith's Merc. Law 290.

After this the defendants could only by a right of stoppage *in transitu* interfere with the goods so as to withhold and sell them. No such right was made to appear in the case. There was no insolvency or other equivalent cause alleged against the plaintiff; on the contrary his bill on London in the hands of the defendants, we may presume was good, only wanting the shipping-bills to make it available. The defendants consigned the goods for the purpose of shipment to H. H. Swift & Co., New York, forwarding merchants to the plaintiff at Bahia. The plaintiff had instructed the defendants in their order for the goods, to ship *direct* to Bahia, or *via* Pernambuco (if possible in preference),

[Schmertz v. Dwyer.]

and then to Rio Janeiro. These instructions were not given to Messrs. Swift & Co., but simply a direction to ship to Bahia. This they testify they could not do, and informed the defendants shortly after receiving the goods, that transportation direct could not be had to Bahia, and advised a sale. After the lapse of two or three months, without advice to the plaintiff, the defendants did order a sale of the goods. They had in the mean time greatly advanced in value, perhaps to the full amount of the verdict, which was $900. Predicated of these facts, the court was asked to say that the sale was illegal, and they did. There was no error in this. As already said, the goods belonged to the plaintiff, and no sale was legal under the circumstances. There was no difficulty in shipping via Pernambuco. The Messrs. Swift & Co., themselves, had been engaged in shipping goods to that port for some thirty-eight years. James A. Wilson also proves, that the goods could have been shipped in the fall of 1862 to Pernambuco. The inability to find transportation was the only excuse set up. This was disproved by the testimony referred to, had the plaintiff's directions been pursued—but which were totally disregarded. There was no error in the answer of the court to the point referred to.

Nor was there any error in the rule of damages administered. It was in exact accordance with the rule in Eby v. Schumacker, 5 Casey 40, which was a case of illegal seizure *in transitu*.

We have carefully examined every and all the numerous assignments of error and find nothing wrong; and with the exception of the points specially noticed above, we think further special notice of any of them would neither benefit the case nor the law; we therefore dismiss them, with our opinion upon the whole of them, that there is no error in them which needs correction.

Judgment affirmed.