Grover, J.
 

 This case having been tried and the judgment rendered upon the report of a referee, and the order of reversal by the General Term not showing that it was based in whole or in part upon error of fact, it must be assumed by this court to have been based upon errors of law only. (Code, § 268). The referee finds the fact, that on the 30th October, 1868, the consignors, Gutchess, Houghtaling
 
 &
 
 Graham were the owners of 2,600 barrels of apples then on board the canal boat IT. 37. Farnum, Jr., who, on that day, started the boat to 37ew York, delivering the captain a shipping bill, of which a copy is given in the finding. The finding of the referee that the apples were the property of Gutchess & Co. at this time, must, by this court, be regarded as conclusive as to that fact, evidence having been given upon the trial tending to prove it. This disposes of the argument urged by the defendants’ counsel that the defendants acquired the title to the apples for the reason that they advanced the money to Gutchess & Co. with which they were purchased. It may be well to remark that no such fact was found by the referee, and the evidence given would not authorize such a finding. The money was obtained by the company upon the discount of drafts drawn by one, indorsed by the others upon, and accepted by the defendants. This was the money of the company and not of the defendants. The case shows that the purchases of produce made by the company was upon their own account, and not as agents for the defendants. The
 
 *634
 
 referee was, therefore, right in holding that the title to such property was in the company, and not in the defendants. This I understand to have heen so held by the General Term. But that court held, that upon the facts found by the referee the title to the apples vested in the defendants upon their delivery to the carrier for transportation to Hew York. These facts, in substance, are that some time prior to the shipment in question the company and defendants entered into an agreement by which the company was to procure securities for $15,000 upon real estate to be given to the defendants to indemnify them against loss, upon the receipt of which the defendants were to accept drafts to that amount, with the proceeds of which the company was to purchase grain and other produce, and consign the same to the defendants to be sold on account of the company; and that the defendants were to accept further drafts of the company upon the shipping bills of the property so purchased, with the proceeds of which further purchases were to be made by the company and shipped in like manner to the defendants, upon which further drafts were to be accepted, etc. That the securities were furnished pursuant to the agreement, drafts accepted, property purchased and shipped to the defendants, upon which further drafts were accepted and the business continued until the dealings of the parties under the agreement amounted to a large sum. That at the time of the shipment of the apples, the defendants had accepted drafts of the company, in excess of the securities and property previously shipped, to an amount about equal to the value of the apples. Upon the shipment of the apples, Gutchess, one of the company, delivered to the captain a statement of the property shipped, the amount of freight, the sum advanced thereon, the amount insured thereon, and that it was for the account of Abram Gutchess, one of the company, to be delivered to defendants at Hew York. That at the same time, he took a bill of lading of the property from the captain, signed by him, showing that he was to deliver the property to the defendants at Hew York, for his account. Upon the same day, Gutchess
 
 *635
 
 procured an insurance upon the property to the amount of five thousand dollars, making the loss, if any, payable to the defendants or order upon the return of the certificate. Upon the next day, the company delivered the bill of lading with the certificate of insurance attached thereto, to the plaintiff, whose cashier on the same day mailed them to the defendants in Hew York inclosed in a lettter, informing the defendants that they would be drawn on through the plaintiff thereafter, against the property by the company. The letter and inclosures were received by the defendants by due course of mail. On the second of November a draft of $5,000 was drawn by the, company upon the defendants, and discounted by the plaintiff, which was presented to defendants for acceptance and acceptance refused before the receipt of the apples by the defendants. Upon this refusal, the plaintiff requested the defendants to return the bill of lading to it, which they refused. Upon the eighth of November, the apples were received by the defendants, and after that the draft was again presented for acceptance, which was refused. Whereupon, the plaintiff demanded the apples of the defendants, and they refused to deliver them to the plaintiff. The above is the substance of all the facts deemed material to the determination of the rights of the parties. The first question obiously is, whether the defendants acquired title to the apples upon their delivery to the carrier for shipment.
 
 Holbrook
 
 v.
 
 Wight
 
 (24 Wend., 169);
 
 Grosvenor
 
 v.
 
 Phillips
 
 (2 Hill, 148);
 
 Dows
 
 v.
 
 Cobb
 
 (12 Barb., 310), and
 
 Anderson
 
 v.
 
 Clark,
 
 (9 Eng. Com. Law) are cited by the counsel for the defendants in support of their title. An examination of these cases will show that no one of them is applicable to the facts of this case. In
 
 Holbrook
 
 v.
 
 Wight
 
 it appeared that Ticknor & Co. were manufacturers of satinets, which they had been, in the habit of sending to the plaintiffs in New York for sale upon commission, and obtaining advances thereon; that they sent to him invoices of the satinets in question, with advice that they were about to ship the same, consigned to him, and drew upon him on account of such shipment, which the plain
 
 *636
 
 tiffs accepted. Subsequently Ticknor & Co. delivered the satinets to White
 
 &
 
 Co., warehousemen, marked for the plaintiffs, at their place of business in New York. Afterward White
 
 &
 
 Co. delivered the goods pursuant to an order of Ticknor
 
 &
 
 Co., to the defendant to forward to the plaintiffs in New York. Held, that under these facts the jury were authorized to find that the goods had been delivered by Tick-nor
 
 &
 
 Co. to the defendant with intent to vest the title in the plaintiffs, who had made advances to them on the identical goods so delivered, and that the title vested in the plaintiffs upon such delivery.
 
 Orosvenor
 
 v.
 
 Phillips
 
 was a case where the owner, one Muir, was a manufacturer of brown cotton cloths, and in the habit of sending them to the plaintiff for sale upon commission, and was indebted to the plaintiff for advances to him, and had agreed with the plaintiff to ship him goods to reimburse such advances; that in pursuance of such agreement he had shipped the goods in question, consigned to the plaintiff, sending the plaintiff an invoice of the goods. Held, that the title vested in the plaintiff. In this, as in the case last cited, there could be no doubt but that the goods were set apart by the owner for the special purpose of vesting the title in the consignee as security for the advances and for the purpose of satisfying the same, and that they were delivered absolutely to the carrier for this purpose. In
 
 Dows
 
 v.
 
 Cobb
 
 the goods were delivered to a carrier, consigned to the plaintiff, and the bill of lading forwarded to him, and he made advances thereon. Held, that the' title had vested in him. This case, it is manifest, has no analogy to the present. In
 
 Anderson
 
 v. Clark, one who was in arrear to the plaintiff for advances upon property previously shipped, shipped a quantity of butter, consigned to him, sending him the bill of lading and an invoice. Held, that the title vested in the plaintiff, although he refused to accept a bill drawn at the same' time. Sending the bill of lading to the plaintiff, without attaching any condition thereto, showed that the property was delivered to the carrier for the purpose of vesting the title in the plaintiff. In the
 
 *637
 
 present case the defendants had advanced nothing upon the apples. So far as appears they had no knowledge that Gut-chess
 
 &
 
 Co. designed to ship any to them, or that they had purchased any. The first knowledge that they had was acquired from the bill of lading sent them by the plaintiff’s cashier, and this was inclosed in a letter stating that the property was to be drawn against by the consignors through the plaintiff. This was notice to them that the consignment to them was conditional, that if they accepted the shipment they must accept the drafts drawn against it. The conduct of Gutehess
 
 &
 
 Co. in taking the bill of lading from the captain of the boat and delivering the same to the plaintiff and procuring the discount on the credit thereof, shows that they did not intend to deliver the property to the carrier with intent to vest the title absolutely in the defendants, but only upon condition that they accepted and paid the drafts to be drawn against it. In some of the cases some weight appears to have been given to a previous agreement, of the owner to ship the property to the consignee. The only effect of such a prior agreement is, that it tends to show that the delivery to the carrier was made in pursuance of such agreement, and, therefore, with intent to vest the title in the consignee. The prior agreement to ship the property confers no title upon the consignee. The owner may violate his agreement and not ship the property at all; or, if he ships, may consign it to another person. In either event no title is ever acquired by virtue of the unexecuted agreement to ship. If such an agreement was, as in the present case, made upon a good consideration, an action may be maintained for its breach by the party injured, but no title is acquired. This shows that it is not the agreement to ship that confers the title, although such agreement is founded upon a good consideration; but the actual shipment, accompanied by an unconditional consignment in pursuance of such agreement, which proves that the delivery to the carrier was with intent to give the consignee a right of property free from any condition whatever, the owner of the property being free to ship the property or
 
 *638
 
 not, and if he ships to consign the same to one with whom he has made a prior agreement, to consign the same to him or to another, it follows that if he consigns to the former he may impose any conditions upon the consignment he chooses, and that such consignee can acquire title to the property only hy performing such conditions. This case cannot be distinguished in principle from the
 
 Bank of Rochester
 
 v.
 
 Jones.
 
 In that case the shipper was indebted to the defendant for advances upon previous shipments, the same as in this. He took a bill of lading from the carrier by which the property was consigned to the defendant and delivered the same to the bank, drew a draft upon the consignee against the property, which was discounted by the bank. The hank attached the draft to the bill of lading and sent them to the defendant, who refused to accept the draft, detached the hill of lading therefrom, and subsequently received the property and claimed to hold the same as security for his previous advances. Held, that he acquired no title, hut was a
 
 tort feasor
 
 in dealing with the property after his refusal to accept the draft. Sending the bill of lading hy the plaintiff’s cashier in the present case, with notice that the property was to he drawn against by the consignors, through it informed the defendants that the consignment was conditional upon their acceptance of such drafts, the same as would the attachment of the draft to the bill. We have already seen that the prior agreement by G-utchess
 
 &
 
 Co. to ship all the property purchased by them to the defendants, does not aid their title, the referee having, in effect, found that the consignment was conditional upon their acceptance of the drafts to be drawn against it and the evidence sustaining such finding. Under these facts the defendants acquired no title. The remaining question is, whether the plaintiff ■ acquired title to the apples. In considering this question it must he assumed that the referee found that Grutchess & Co. delivered the bill of lading to the plaintiff with intent to pass the title to it for the purpose of securing payment of their draft upon the defendants, discounted by the bank for them. This, in
 
 Bank of Rochester
 
 v. Jones, was held sufficient to
 
 *639
 
 transfer the title of the property to the plaintiff. In this case this question was elaborately discussed by the court and the authorities reviewed. It must be considered as settling the question in this State. (See, also,
 
 Gibson v.
 
 Stevens, 8 How. U. S. Sup. Court, 384.) This leads to the reversal of the order of the General Term and the affirmance of the judgment entered upon the report of the referee.
 

 All concur. Folger, J., absent.
 

 Judgment accordingly.