PETER S. MARCH and others, Respondents, v. THE FIRST NATIONAL BANK OF MOBILE, Appellant.

*Bill of exchange — acceptance of, induced by fraudulent concealment of facts.*

In an action for fraudulent concealment by which the plaintiffs were induced to accept a bill of exchange, it was *held*, that if a bill of lading was exhibited at the time of the presentment of the bill of exchange for acceptance, and the plaintiffs were thereby induced to believe that the bill of exchange was secured by certain cotton mentioned in the bill of lading, and if, at the time of such presentment, defendant knew that the cotton had not been paid for and that steps were being taken to reclaim it, and such facts were concealed from plaintiffs with the intention of inducing the acceptance of the bill of exchange, upon the faith of the security of the cotton, and the bill of exchange was accepted upon the faith that the bill of lading was a valid bill for the cotton described in it, the plaintiffs were entitled to recover.

Appeal from a judgment for plaintiff, entered on a verdict.

The action was brought for an alleged fraudulent concealment by the defendant, whereby the plaintiffs were induced to accept a bill of exchange. The plaintiffs alleged that on or about the 7th day of July, 1870, certain persons, doing business at Mobile under the name of Stannard Brothers & Co., shipped to New York 215 bales of cotton, to be delivered to order on payment of freight, dangers of the seas, etc., excepted, and they received a bill of lading therefor, which they indorsed in blank and delivered to the defendant, whereby the defendant became the owner and consignee of the said cotton, with full power to receive and hold the same. That the said Stannard Brothers & Co. did also, at or about the same time, draw a draft upon the plaintiffs, dated 9th July, 1870, whereby they requested the plaintiffs, thirty

days after sight, to pay the defendant $17,985.32 in currency, and to charge the same to their account as advised, and delivered the draft, unaccepted by the plaintiffs, to the defendant. That the defendant received the said bill of lading and draft, and, after indorsing upon the said draft the words "Pay 3d N. Bk., N. Y., or order, for collection account First National Bank, Mobile, Ala.," and after writing on the bill of lading, over the blank indorsement of the shippers, the words "Pay 3d National Bank" (meaning thereby that the cotton therein mentioned should be delivered to the said Third National Bank), sent the said bill of lading and draft to the Third National Bank of the city of New York, with instructions, in substance and effect, to present the said draft to the plaintiffs for acceptance, and if accepted, to retain and collect the same at maturity, and place the proceeds thereof to the credit of the defendant, and to retain the said bill of lading, and to receive and hold the cotton therein mentioned until the said draft should be accepted and paid, and then to deliver the same to the plaintiffs.

That the said Third National Bank having, as the agent of the defendant, received the said bill of lading and draft so indorsed for the purpose aforesaid, the defendant, by and through the said Third National Bank as its agent, did afterward and on the thirteenth July, in the year last aforesaid, cause the said draft to be presented to the plaintiffs, at the city of New York, for acceptance, and in order to induce the plaintiffs to accept said bill, did also at the same time exhibit to the plaintiffs the said bill of lading, and did thereby then and there, in substance and effect, represent, state and give the plaintiffs to understand and believe, that the defendant was the legal owner or pledgee of the cotton mentioned in the said bill of lading, and had power to dispose of the same. That thereupon the plaintiffs, relying upon the truth of the statements and representations, and upon the promise so made, accepted the said draft. That the plaintiffs accepted the said draft solely upon the faith of the representations and statements of the defendant, so made by or on its behalf as aforesaid. That the representations and statements so made by and on behalf of the defendant as aforesaid, and upon the faith of which the plaintiffs accepted the said draft, were not true, because the defendant was not such owner or pledgee of the

said cotton, with power to hold and deliver it to the plaintiffs on payment of the said draft, as the defendant claimed and pretended to be, but, on the contrary, as the defendant well knew, the said cotton was then and there subject to liens in favor of certain persons at Mobile, commonly called factors, for unpaid purchase-money, which several liens were prior to any right, title or claim thereto by the defendant, and the said cotton was liable to be reclaimed and taken from the said steamer to satisfy such liens. That a large number of suits were commenced by the said factors as such lienors of said cotton as aforesaid, in the Circuit Court of Mobile county, Alabama, against the master of the said steamer; that process of law was thereupon issued, under and by virtue of which the sheriff of the said county, with the knowledge of the defendant, did, on or about the eighteenth of July, in the year last aforesaid, levy upon, seize, take and remove 212 bales of cotton out of said steamer, being parcel of the aforesaid 215 bales of cotton, and held and still holds the same, to satisfy the aforesaid liens thereon, which liens amount to, or about, or nearly, the value of said cotton. That said Stannard Brothers & Co. have failed in business and become insolvent. That afterward the draft fell due and the plaintiffs were obliged to pay it.

The answer admitted the shipping of the cotton; its seizure; the indorsement of the bill of lading; its presentment with the draft; the acceptance of the latter; the insolvency of Stannard Brothers & Co.

And the defendant alleged, that at various dates during said time, and in the course of said business between said Stannard Brothers & Co. and the plaintiffs, the said Stannard Brothers & Co. negotiated to the defendant numerous drafts drawn by them upon the plaintiffs, all of which were duly and regularly accepted and paid by the plaintiffs, and that the defendant thereby, and by the course of dealing between said Stannard Brothers & Co. and the plaintiffs, was induced to believe, and at the time of the negotiation to the defendant of the draft mentioned in the complaint did believe, that the said Stannard Brothers & Co. were authorized by the plaintiffs to draw and negotiate, at said city of Mobile, drafts on the plaintiffs, and that the defendant was induced thereby to purchase, and on the faith thereof did, in the usual course of its busi-

ness, in good faith and without notice or knowledge of any irregularity connected therewith, purchase from said Stannard Brothers & Co. the said draft in the complaint mentioned, receiving at the same time from said Stannard Brothers & Co. the said bill of lading, as further security for the payment of the amount of said draft as aforesaid.

And the defendant further alleged that the said Stannard Brothers & Co. were authorized by the plaintiffs to draw the draft mentioned in the complaint, and to negotiate the same to the defendant as aforesaid.

The judge charged the jury: "I charge you that if the jury believe that by the exhibition of the bill of lading at the time of and in connection with the presentment to the plaintiffs of the bill of exchange for acceptance, the defendant intended to mislead the plaintiffs into the belief that such bill of exchange was actually secured by the pledge of the cotton described in said bill of lading; and if the jury further believe that before the bill of exchange was accepted, the defendant knew that the cotton described in the bill of lading had not been paid for, and that the vendors to Stannard Brothers & Co. were taking steps with a view to reclaim it, under the law of Alabama, and intentionally concealed these facts from the plaintiffs, in order to lead them to accept the bill of exchange upon the faith of the security of the said cotton, and they accepted such bill on the faith of the bill of lading being a valid bill for the cotton described in it, they have a right to recover against the defendant the damages resulting from the bill of lading being a defective or insufficient security; otherwise not."

The jury rendered a verdict for the plaintiffs for the sum of $21,541.90.

*Wm. H. Scott*, for the appellant.

*S. P. Nash*, for the respondents.

DAVIS, P. J.:

The questions presented by this case are by no means free from doubt, and they well deserve the consideration of the court of last resort. The bill of exchange drawn by Stannard Brothers & Co.

on the plaintiff's firm, made no reference to the bill of lading. It was sent to the agent of defendants in the city of New York, pinned to the bill of lading, properly indorsed to the defendants. This was notice to the agent that the bill had been drawn against the cotton described in the bill of lading, and that the latter bill and the title of the property had been transferred to and were held by the defendants as security for the acceptance and payment of the bill of exchange.[*] The agent of the defendants was thereby authorized to present the bill of exchange to the plaintiffs for acceptance, with the bill of lading annexed, which act was equivalent to saying that the bill of exchange had been drawn against the cotton mentioned in the bill of lading, the title of which was held as security by the defendants, and would, upon acceptance, become the security of the plaintiffs. [†] It was shown that the bill of exchange was presented to the plaintiffs on the thirteenth day of July. At the time of presentation, the bill of lading was annexed and presented to the plaintiffs, but was taken off by the person presenting the papers, on leaving the bill of exchange for acceptance. The plaintiffs were entitled to the possession of the bill till the next day, before accepting. They were called upon in the afternoon of the thirteenth and requested to accept, but declined; on the fourteenth they made their acceptance and delivered the bill to the agent of defendants, by whom, under instructions from defendants, it was sold to a *bona fide* purchaser at a discount, and without recourse. Evidence was given tending to show that before the fourteenth of July the defendants knew that the cotton was claimed by the factors who had sold the same to Stannard Brothers & Co., on the ground that it had not been paid for by that firm, and that as early as the twelfth, and certainly on the thirteenth, the defendants had reason to believe that the bill of lading was not security of any value in their hands, and that with this knowledge they hurried up their agent by divers telegrams to procure immediate acceptance, saying nothing of those facts either to the agent or to plaintiffs. If the withholding of their knowledge of the true state of affairs in relation to the value of the bill could in law charge the defendants on the ground of fraudulent

---

[*] Cayuga County Bank v. Daniels, 47 N. Y., 631 ; Marine Bank of Chicago v. Wright, 48 id., 1.

[†] The Marine Bank of Chicago v. Wright, *ubi supra*.

concealment, enough evidence on that subject was given to carry the case to the jury. The court, in submitting the case to the jury, left it to them to say " whether, in presenting the bill of exchange to the plaintiffs for acceptance, with the bill of lading attached to it, the defendants intended to convey to the plaintiffs the idea that it was a bill of exchange secured by the cotton described in the bill of lading," and he instructed the jury that if they did not find such to have been the intent, that was the end of the case. He instructed the jury also, that to entitle the plaintiffs to recover, they " must find that the acceptance was upon the faith of the exhibition of the bill of lading alone. If it was on the credit of Stannard Brothers & Co., or upon any request from them, or for any other reason, the plaintiffs cannot recover." He charged also, that the element on which the case could alone stand was fraud, and that if they found as above stated in respect to the intent in presenting the bill of lading with the bill of exchange, they should then inquire whether the defendant knew at the time that it was not true that the cotton was any security for the bill of exchange; and finally he submitted, as he said, " the proposition which contained the whole law of the case," in these words : " I charge you that if the jury believe that by the exhibition of the bill of lading, at the time of and in connection with the presentment to the plaintiffs of the bill of exchange for acceptance, the defendants intended to mislead the plaintiffs into the belief that such bill of exchange was actually secured by the pledge of the cotton described in said bill of lading; and if the jury further believe that before the bill of exchange was accepted, the defendants knew that the cotton described in the bill of lading had not been paid for, and that the vendors to Stannard Brothers & Co. were taking steps with a view to reclaim it, under the law of Alabama, and intentionally concealed these facts from the plaintiffs, in order to lead them to accept the bill of exchange upon the faith of the security of the said cotton, and they accepted such bill on the faith of the bill of lading being a valid bill for the cotton described in it, they have a right to recover against the defendants the damages resulting from the bill of lading being a defective or insufficient security; otherwise not." Doubtless, if the bill of exchange had been sent alone and accepted by plaintiffs, they would have had no redress against the defendants, however well the failure of

the bill of lading as security might have been known to them. The defendants were under no obligations to make any disclosure of facts to the plaintiffs to prevent their acceptance of the bill, but they were also under obligations to do nothing and say nothing, with knowledge of the real facts, which would operate to secure an acceptance by an expression of falsehood or a suppression of truth. Knowing that the bill of lading was of no value, the defendants had no right to induce the acceptance of the bill of exchange, by presenting the bill of lading as one of value, concealing their knowledge of its true character. In the cases cited by the learned counsel for the defendants, where the bill of lading turned out to be a forgery, it can hardly be doubted that if the holder of such a bill had presented it annexed to the draft as a genuine one, *with knowledge that it was in fact forged,* and in silence on that subject, he would not be heard to say that there was no fraud in inducing an acceptance by presenting the false appearance of security when he knew that in reality he was giving commercial currency to a forgery.

We think the judgment should be affirmed.

DANIELS and BRADY, JJ., concurred.

Judgment affirmed.