THE FLOUR CITY NATIONAL BANK OF ROCHESTER, RESPONDENT, *v.* GEORGE GARFIELD, AS GENERAL ASSIGNEE, ETC., OF S. & J. A. HARWOOD, APPELLANT.

*Draft discounted upon the faith of goods shipped by the drawer — when the party discounting it acquires an equitable lien upon the proceeds of the goods.*

On May 23, 1881, one Harwood, the sole surviving member of a firm, shipped on board of a canal boat, of which he was a part owner, a cargo of wheat belonging to the firm to be transported from Holly, New York, to Ege & Otis, commission merchants in the city of New York. On the twenty-fourth Harwood drew a draft in the firm name upon the assignees for $5,000 and procured the same to be discounted by the plaintiff, the plaintiff being then informed that the wheat had been so shipped, and understanding that the draft was drawn against the credit thereof, and relying upon the agreement that the draft was to be accepted and paid by the consignees from the proceeds of its sale. On the same day Harwood wrote to the consignees, inclosing the bill of lading and a policy of insurance upon the wheat, both of which were taken out in the name of the firm, informing them that he had drawn the draft on the wheat and requested them to accept it.

On May twenty-fifth, Harwood being insolvent, made a general assignment for the benefit of his creditors. The assignee seized the wheat before it reached the consignees and sold it. The consignees having failed to accept the draft the plaintiff brought this action to have a lien upon the proceeds of the wheat established in its favor as against the assignee.

*Held,* that it was entitled to the relief sought for.

APPEAL by the defendant Garfield, from parts and portions of a judgment, entered on the report of a referee.

*William E. Hobby,* for the appellant.

*Thomas C. Montgomery,* for the respondent.

BARKER, J.:

The purpose of the action is to secure a decree declaring a lien in the plaintiff's favor, on certain funds in the hands of the defendant Garfield, as the assignee for the benefit of the creditors of one Jeffrey A. Harwood, survivor of himself, and Simon Harwood, who did business as merchants, under the copartnership name of S. & J. Harwood. The judgment upheld the lien as claimed by the plaintiff and directed its payment. So much of the decree as determines the rights of the other defendants is acquiesced in by all parties.

The material facts upon which the plaintiff's rights and equities are, based, are as follows: At the time of the death of Simon Harwood, which occurred on the 17th day of April, 1881, the firm were the owners of a quantity of wheat, in store, in their warehouse in Holly, N. Y. Thereafter, and on the twenty-third of May, the survivor, J. A. Harwood, shipped the same on board of a canal boat, of which he as surviving partner was part owner, consigned to the defendants Ege & Otis, commission merchants doing business in the city of New York. A bill of lading in the usual form was prepared, signed by the master of the boat and also by the defendant Harwood, in the name of the late firm. In this instrument the quantity and variety of wheat is given, but no mention is made on whose account the cargo was shipped, or the rights and interest of parties therein. On the same day a policy of insurance was taken out on the wheat in which the name of the late firm is also mentioned as owners. On the next day, May twenty-fourth, the defendant Harwood, in the name of the firm, drew his draft on the consignees for $5,000, at thirty days, payable to the order of plaintiff's cashier, and caused the same to be presented to the plaintiff for discount, which was arranged and the proceeds paid over in cash to the drawer.

The bank sent the draft forward to the drawees for their acceptance, which was declined, and the draft was thereupon protested for non-acceptance and remains unpaid. On the day the draft was discounted, the drawer, Mr. Harwood, forwarded to the consignees a letter of advice, in which the bill of lading and policy of insurance were inclosed, with the request that they would accept the draft. The paragraph relating to that subject being as follows:

" We inclose you bill of lading and policy of insurance, on boat load of wheat shipped on board of boat Harwood, estimate quantity seventy-eight hundred bushels. * * * We made a thirty day draft on you, at the Flour City National Bank, on the wheat for five thousand dollars, we want to use this amount now. Please accept and oblige." On the day succeeding Harwood being in insolvent circumstances, made a general assignment to the defendant Garfield for the benefit of his creditors. Before the wheat reached the consignees, Garfield, the assignee, took possession of the same, converted it into money and the avails amounting to $9,000 were in hand at the time of the commencement of this suit, and are now on special deposit by an arrangement of the parties, to abide the result of the litigation.

The plaintiff's claim is this, that by virtue of an understanding with the drawer of the draft made at the time the same was discounted, the bank secured an equitable lien upon the wheat against which the draft was drawn and the same being converted into money, the lien followed the fund and should now be paid out of it in preference to the other creditors of the drawer, as provided for in the assignment.

The assignee disputes this claim and insists that there is no equity in the plaintiff's favor superior to the rights of the other creditors of the insolvent. This presents the only question for our determination on this appeal.

The learned referee in his report of the facts as to the arrangements between the drawer and the bank made at the time of the discount, finds: That at the time the bank discounted the draft it was informed that the wheat had been shipped to Ege & Otis as consignees; that such discount was made upon the credit of the wheat which had then been shipped by the drawer, and that the plaintiff relied upon the avails of the wheat for the acceptance and payment of the draft.

Upon this finding and the other undisputed facts and circum stances in the case the referee held that the bank acquired a lien or an interest in the nature of an equitable assignment upon the property, which followed the fund, and directed the payment of the draft out of the same. In this disposition of the rights of the parties to this appeal we fully and unhesitatingly concur.

At the time of the shipment Harwood was the owner of the wheat, as such owner could sell the same or place a lien thereon in favor of creditors, or convey the same in trust for their benefit. That it was his intention and purpose to create a fund, to be realized on a sale of the wheat, to pay the draft discounted by the plaintiff, is a fact admitting of no controversy in view of the evidence and circumstances of the case. The letter of advice clearly expresses such intention, and invited the consignees of the property to accept the same as a surety for the holder, and placed the cargo at their disposal as an indemnity against their liability. It is a just and reasonable inference to be drawn from the consignors own acts, that he intended to place the property in the hands of the consignees to secure from them the favor of an acceptance, and the legal inference from these facts is to the same effect, so far at least as these parties are concerned.

The consignees having declined to become parties to the draft, they failed to secure any interest in the consignment, and the assignee of the consignor having the legal title to the goods by virtue of the assignment was justified, and it was his duty, as against any claim which the consignees might make, to seize the cargo and take charge of the same, subject to such liens and equities as the law gave the owner of the draft, in the property, arising out of the transaction.

The draft in connection with the agreement of the parties in legal effect, is an order upon a particular fund, for the payment of the moneys loaned thereon, and the property became hypothecated for its payment prior to the conversion of the same into money.

The draft in and by itself would not affect the fund expected to be created by the sale of the property, for standing alone, disconnected from all the other circumstances in the case, it would not indicate a purpose on the part of the drawer to pay the same out of a special fund to be realized from a particular source. (*Chapman* v. *White*, 2 Seld., 412.)

The lien or interest of the claimant in the property or fund sought to be reached, has its foundation in a special agreement or implied understanding of the parties, entered into at the time of the purchase of the draft, and in upholding the lien and devoting the property to the payment of the debt, the courts execute the agreement and carry out the understanding of the parties.

The principle invoked by the plaintiff is the doctrine of equitable assignments, as the same is established in reported decisions upon that subject.

In *Burn* v. *Carvalho* (4 Milne & Craig, 690), the rule contended for by the plaintiff was laid down and applied to the facts as they appeared in that case. Fortunato, a merchant in Liverpool, being under pecuniary obligations to the plaintiffs, and having property in the hands of his agent Rego, at Bahia, promised and agreed with the plaintiffs to apply such property to the discharge of his liabilities to the plaintiffs, and sent directions to his agent to convert the property and apply the same for that purpose, but became bankrupt before such instructions could reach Rego. The chancellor held that, notwithstanding the assignment by the bankrupt, the plaintiffs had an interest in the goods in the nature of a lien, which equity would protect, stating the rule to be, that " an order given by a debtor, to his creditor, upon a third person having funds of the debtor, to pay the creditors out of such funds, is a binding, equitable assignment of so much of the fund." That the equitable lien had its foundation in the agreement of the debtor to pay the creditor out of the particular fund.

The recent case of *Parker* v. *Baxter* (the decision in the Supreme Court being reported in 19 Hun, 410), is in point. The facts in essential particulars are similar to those in this case, and it was there held that the purchasers of a bill of exchange, drawn against a consignment of property, had an interest in the fund derived on a sale of the property in the nature of an equitable assignment. A short statement of the facts is all that is necessary to bring to view the principle of law which controlled the decision. Baxter & Co. were the owners of a quantity of corn which they had ordered aboard of a vessel in New York harbor, then loading for Liverpool, and received a bill of lading from the master of the vessel, by the terms of which the corn was consigned to the Bank of Liverpool. They then drew a bill of exchange on that bank, payable to the order of Brown, Shipley & Co., of London, which, together with the bill of lading, was presented to Brown, Brothers & Co., of the city of New York, who purchased the same for the benefit of the drawers and paid them the proceeds. On the same day Baxter & Co. wrote their consignee, the Bank of Liverpool, stating that the corn had

been shipped and a draft drawn against the same, inclosing the bill of lading with a letter of advice stating that they had drawn against the corn. Before the ship left the port Baxter & Co. failed and made a general assignment for the benefit of their creditors. Thereupon Brown, Brothers & Co., the purchasers of the draft, laid claim to the corn and claimed possession for the purpose of securing payment of the draft out of the same. Parker, the plaintiff, who sold the corn to Baxter & Co., not having received his pay, claimed title to the corn upon the alleged ground that the delivery by him of the corn was conditional, and several actions at law were commenced, each party seeking to gain possession of the corn. It was then stipulated that the corn should be sold in the New York market and the fund deposited to await the determination of the rights of the parties. All the claimants were before the court in an action in the nature of a suit in equity, and it was held that the drawer's order on the bank, by virtue of the arrangement between the parties, created a charge or lien upon the corn and its proceeds in favor of the parties discounting the bill; that it amounted to an equitable assignment in favor of the owners of the draft, who had advanced their money upon the faith of the arrangement.

This case was affirmed in the Court of Appeals (86 N. Y., 586). The court did not express an opinion on the question we are considering.

The case of the *Bank of Rochester* v. *Jones* (4 Comst., 497) is also an authority for holding that the plaintiff's lien is superior to the other creditors of the insolvent, who are represented in this litigation by the assignee.

In that case Foster, the owner of 200 barrels of flour, procured a forwarder's receipt for the same, and upon the strength of it procured a discount from the plaintiff's bank upon a draft drawn by him on the defendant Jones, the same being sent forward to Jones, the consignee, for acceptance, with the receipt attached. Jones on receipt of the draft refused to accept the same, but detached the forwarder's receipt and returned the draft dishonored, and afterwards took the flour from the boat and sold it on his own account, he at that time being a general creditor of Foster, the shipper and drawer of the draft. In an action of trover by the bank against Jones, for a conversion of the property, the bank was non-

suited and the same was set aside on appeal, the court holding that the bank had such an interest in the property that it could maintain an action at law for the conversion of the same. In delivering the opinion of the court, Judge PAIGE remarked: "If the bank of Rochester had filed a bill in equity for relief, it is quite clear that the bank would have been entitled to a decree declaring their demand against Foster, for the moneys advanced on his draft on Jones, an equitable lien on the flour. * * * Having advanced their money on the faith of, and at the time of the making of the agreement, that the flour should be held as security for the acceptance or payment of the draft, their equitable claim to a lien on the flour, was both superior and prior to that of Jones for his pre-existing demand for the balance of his general account against Foster."

The case before us is in every respect parallel to this. The circumstance that Foster delivered the bill of lading to the bank at the time the draft was purchased, instead of sending it forward himself to the consignee, is not controlling, as it is only an item of evidence either way, as indicating the intention and purpose of the owner of the property to place a lien thereon, to secure the loan of money.

In this case Harwood, the drawer of the draft, himself sent forward the bill of lading with the intention, that Ege & Otis, should have in their hands evidence, that the title to the wheat was in them if they should assent to the condition imposed, an acceptance of the draft.

In Jones' case, as well as this, the bill of lading did reach the hands of the consignee, and in each case the same was detained by the consignees, and all the other material facts are the same.

There is an almost unbroken line of judicial expression, to the effect that upon a state of facts such as are found by the referee, the purchaser of the draft has an equitable lien upon the property against which the draft is drawn, as a security for the payment of the money advanced, and the same can be enforced in a court of equity, whether the drawee accept the draft or not, and the same attaches from the time of discounting, and continues after the goods reach the consignee, and if the draft is not paid before, the lien adheres to the funds derived from the sale of the property. (*Marine Bank* v. *Jauncey*, 1 Barb.

[S. C.], 486; *Hoyt* v. *Story*, 3 id., 263; *Clark* v. *Mauran*, 3 Paige, 373; *Morton* v. *Naylor*, 1 Hill, 583; *Cayuga County Bank* v. *Daniels*, 47 N. Y., 637; *Bailey* v. *Hudson River R. R. Co.*, 49 N. Y., 77.)

The evidence justifies the conclusion reached by the referee, that the draft was discounted by the bank upon the credit of the wheat which had been shipped by the drawers, and relied upon the avails of the same for the acceptance and payment of the draft. The president of the bank testified that Garfield, who acted as the drawer's agent in procuring the discount, told him that the wheat had been shipped the day previous to Ege & Otis, and that the draft was drawn against such shipment. This evidence, in connection with the letter inclosing the bill of lading to the consignees, accompanied with the request that they accept this draft, justifies the conclusions of fact found by the referee and they should not be disturbed.

It appears from the report that the fund is sufficient to pay the plaintiffs' draft in full. As the appeal is limited to such portions of the decree as directs the payment by the assignee to the plaintiffs of the amount of their draft, and the defendants Ege & Otis acquiesce in the provision establishing the plaintiffs' priority, no other question is before us for consideration.

Judgment is affirmed, with costs.

Present — HARDIN, P. J., BARKER and DWIGHT, JJ.

So ordered.