## JAMES STARK, RESPONDENT, *v.* THE UNITED STATES NATIONAL BANK, APPELLANT.

*Liability of a bank receiving paper for collection — it cannot apply the proceeds to the payment of a general balance of account existing against the bank from which the paper was received — right of the owner to repossess himself of the paper on the failure of the bank.*

Upon the trial of this action, it appeared that a note and draft were indorsed in blank by the owners, the firm of Mohler & Sons, and delivered with letters of instruction to the State Bank of West Virginia for collection. By this bank they were sent to the defendant bank with a letter of advice and an indorsement, each to the effect that they were sent for collection. After they had been received by the defendant, and before either of them had been collected, the State Bank of West Virginia became insolvent and failed, and the firm of Mohler & Sons assigned the note and draft and their right of action to the plaintiff, who, after a refusal of the defendant to comply with a demand for the note and draft made by him, brought this action for their conversion.

*Held,* that as no draft or check was drawn upon the defendant by the Virginia bank, and no advance was ever made by the defendant based upon either the note or the draft, it had no legal right to hold the paper for its security on account of the general balance in its accounts against the Virginia bank.

That it was legally bound, as the Virginia bank had failed and discontinued its business, to return the paper to its owners, and as it failed to do that when a proper demand for it was made, and afterwards proceeded and collected the note and the draft, it was chargeable with a conversion of those instruments.

That the objection that the plaintiff, as the assignee of the owner of the paper, could not maintain the action was untenable. That when the Virginia bank became insolvent and incapable of discharging the duties of its agency, the owners of the paper were entitled to repossess themselves of it and proceed with its collection for themselves.

*Lindauer* v. *Fourth National Bank* (55 Barb., 75) and *Dod* v. *Same* (59 id., 265) followed.

Appeal from a judgment in favor of the plaintiff, entered on the report of. a referee.

*Charles B. Alexander*, for the appellant.

*Andrew Shiland, Jr.*, for the respondent.

Daniels, J.:

The complaint in this action set forth two grounds of action, the first for the recovery of a promissory note made by the firm of Allen & Lauce for the payment of $500 to the order of Mohler & Sons in sixty days after the 25th of April, 1884, the other was for the recovery of a draft, or bill of exchange, drawn by A. B. Lewis on the firm of Dannatt & Pell, for the sum of $133.29, in sixty days after the 26th of April, 1884. This draft and note were alleged to have been received by the defendant and converted to its own use. And as that conversion was found to be proved by the evidence, and the amounts had in the meantime been collected, a judgment was directed in favor of the plaintiff for damages, amounting to the sums received upon the paper, with interest thereon.

The note and the draft were owned by the firm of Mohler & Sons, and they were indorsed in blank and delivered to the State Bank of West Virginia for collection. Accompanying them were letters of instructions to that effect, and this bank transmitted them to the defendant with an indorsement that they were sent for collection. After that, and before either demand was collected, the State Bank of West Virginia became insolvent and failed in its business, and Mohler & Sons, by an instrument in writing, assigned the note and draft and their right of action for damages to the plaintiff. After the failure of the State Bank of West Virginia, Mohler & Sons demanded the note and draft of the defendant, which refused to deliver them up, claiming to hold them on account of overdrafts previously made by the State Bank and paid by the defendant.

But it appeared by the evidence that no draft or check was drawn upon the defendant by the State Bank of West Virginia against either of these demands, nor was any advancement at any time made upon either the note or the draft by the defendant or the State Bank. What the defendant had done was to pay the drafts

drawn upon it by the State Bank of West Virginia, having no reference whatever to either of these demands; and in paying the overdrafts the defendant did not do that under any special reliance placed upon this paper, but it was still insisted in its defense that it was entitled to the benefit of the paper against the owner for the general balance accruing in its favor on the account.

This point, however, is not sustained by the authorities in this State relating to this transaction. It is true that the State Bank might have negotiated the note and the draft to the defendant, on the faith of the general indorsement of the payees. And if that had been done, and the defendant had advanced its money upon the paper, it would have been entitled to hold it against the parties delivering it to the State Bank for collection. But that was not done, neither did the State Bank obtain any title to the paper, otherwise than in its agency for the collection, by the delivery of the draft and note to it. For that delivery was accompanied by written instructions, that it was made to enable the State Bank to forward and collect the paper. And accordingly, as between the State Bank and the indorsers, it had no title whatever to the paper, beyond the duty and obligation to collect it and return the proceeds to the parties from whom it had been received, or the plaintiff as their assignee.

In transmitting the paper to the defendant it was indorsed for collection, and the letters of instructions accompanying the note and draft further apprised the defendant of this fact. And from this information it was to be inferred by the defendant that the State Bank was acting in behalf of some other party in the collection of the paper for that party, and the defendant undertook the performance of the same duty with the knowledge of the existence of that fact. The paper was not credited in the defendant's account with the State Bank, neither was the defendant asked to, nor did it deal with the paper in any other form or manner than that of a collection agent. And that was the extent of its relation to this paper when the State Bank failed and it was demanded by the parties who had delivered it to the State Bank to be collected. And in this state of the facts the defendant had no legal right to hold the paper for its security on account of the general balance of its accounts against the State Bank. (*Scott* v. *Ocean Bank*, 23 N. Y., 289; *McBride* v. *Farmers' Bank*.

26 id., 450; *Dickerson* v. *Wason*, 47 id., 439; *Jessop* v. *Miller*, 1 Keyes, 321.)

What it was legally bound to do, as the State Bank had failed and discontinued its business, was to return the paper to its owners, and as it failed to do that when a proper demand for it was made, and afterwards proceeded and collected the note and the draft, it was chargeable with a conversion of those instruments. (*Spraights* v. *Hawley*, 39 N. Y., 441; *Bank of Rochester* v. *Jones*, 4 Comst., 497; *Cayuga County Bank* v. *Daniels*, 47 N. Y., 631; *Jessop* v. *Miller*, 1 Keyes, 321.)

It has been objected that the plaintiff, as the assignee of the owners of the paper, cannot maintain this action. But when the State Bank became insolvent and incapable of performing the functions of its agency, the owners of the paper were entitled to interpose in their own behalf and for their own protection. They were not bound after that to permit the State Bank to proceed with the transaction any further than it had. It had become incapable of discharging the duties of its agency, and the owners of the paper were entitled to repossess themselves of it and proceed with its collection themselves. A point of this description was considered in *Lindauer* v. *Fourth National Bank* (55 Barb., 75) and *Dod* v. *Same* (59 id., 265), where it was held that the action by the owner of the paper might be maintained. The cases holding that the bank transmitting the paper can alone maintain an action against its agent are not in conflict with this proposition. For the plaintiff here, as well as the parties from whom he derived his title, proceeded in disaffirmance of the agency, because of the insolvency of the immediate agent and the refusal of the defendant to observe and fulfill the obligations of the agency which were to collect, preserve and remit the proceeds of the paper for the benefit of the parties for whom the collection should in fact be made.

It is not important to consider whether any of the objections taken to the admissibility of portions of the evidence were well founded or not, for the controlling facts of the case are free from all possible dispute, disclosing the legal condition of the rights and obligations of these parties. And that the witnesses were permitted to proceed farther than they should have gone in giving their evidence, in no manner changed the state or condition of

these facts.    The judgment which has been recovered was well sustained by the proof, and it should be affirmed.

BRADY, P. J., and MACOMBER, J., concurred.

Judgment affirmed.