(46 Misc. Rep. 280.)

### SCHERMERHORN v. GARDENIER.

(Supreme Court, Trial Term, Columbia County. February, 1905.)

1. EXECUTRIX—EXECUTORY CONTRACT OF TESTATOR—RIGHTS OF PARTIES.

Testator in his lifetime agreed to deliver certain farm produce, when ready for market, to defendant, who was to reimburse himself from the proceeds for advances made on the strength of the agreement. *Held*, that the title to the property remained in testator, and, where the produce was delivered by his executrix to the freighter after a conversation in which no reference was made to the agreement, of which the executrix had no knowledge, the freighter acquired no rights, as against the estate, in such produce, and the executrix could recover the amount advanced to testator by defendant, and withheld by him on an accounting for the proceeds of sale.

2. ACCORD AND SATISFACTION.

Where an executrix delivered certain produce to defendant, and received from him a check for the amount of the proceeds of the same, less advances made to her testator before his death, and she accepted the check and used it, at the same time insisting that the advancements could not be retained by defendant, there was not such an accord and satisfaction as would prevent an action by the executrix to recover the balance.

Action by Elizabeth Schermerhorn, executrix, against Ransen Gardenier. Judgment for plaintiff.

G. S. Collier (H. & W. A. Hendrickson, of counsel), for plaintiff.
E. R. Harder, for defendant.

COCHRANE, J. The plaintiff's testator, Abram L. Schermerhorn, died August 9, 1903. Prior to his death the defendant at different times advanced to him cash and merchandise amounting to $527.50. These advancements were made under an agreement,

made in the latter part of 1902, that, when the crops and farm produce of said Schermerhorn for the year 1903 should mature and be ready for market, they should be delivered to the defendant, who is a freighter, and that from the proceeds thereof the defendant should reimburse himself for the advancements thus made. Such is substantially the arrangement as testified to by the defendant's son, whose testimony I accept without hesitation. Such also had been the custom of the parties for several years. After the death of the testator, his executrix, the plaintiff herein, delivered to the defendant the farm produce, which was sold by the defendant for the sum of $1,279.65, after deducting therefrom the freight and commissions to which he was entitled. The defendant has paid this amount to the plaintiff, except the said sum of $527.50 advanced to the testator in his lifetime, as aforesaid, which he declines to pay, and for the recovery of which this action is brought. The estate of the deceased is insufficient for the payment in full of his indebtedness.

If the property had been delivered by the testator under and pursuant to the agreement above referred to, the title to such property would have vested in the defendant, and he could hold the same, or the proceeds thereof, for the payment of the advances made by him thereon. Bailey v. Hudson R. R. Co., 49 N. Y. 70; Cayuga County National Bank v. Daniels, 47 N. Y. 631; Grosvenor v. Phillips, 2 Hill, 147; Bank of Rochester v. Jones, 4 N. Y. 497, 55 Am. Dec. 290; Chapman v. Kent, 3 Duer, 224.

In this case, however, no part of the property had been delivered at the time of the testator's death. Although he had agreed to deliver it to the defendant, and had procured advances thereon on the strength of such agreement, the contract was merely executory. The defendant had no title to the property at the time of the testator's death, and the latter, if he had lived, had the power to do with it as he pleased, subject, of course, to his liability to the defendant for a breach of contract.

In Bailey v. Hudson R. R. Co., 49 N. Y. 70, the court, in speaking of a contract such as exists in this case, said:

"The parol agreement is executory, the title remains in the consignor, and he has the power to transfer the property to whomsoever he pleases, and render himself liable for the nonperformance of the contract. * * * If A. has property upon which he has received an advance from B. upon an agreement that he will ship it to B. to pay the advance or to pay any indebtedness, he may or may not comply with his contract. He may ship it to C., or he may ship it to B. upon conditions. As owner, he can dispose of it as he pleases."

It does not appear that the plaintiff, when she delivered the property to the defendant, did so in pursuance of the contract of her testator. She knew that the latter was indebted to the defendant, but there is no evidence that she knew of the agreement as to the delivery of the property, or that such indebtedness had been incurred on the strength of such agreement. It appears, on the contrary, from the testimony of both parties, that a conversation took place with the plaintiff after the testator's death, in which conversa-

tion no reference was made to the agreement which had been made by the testator, and, as a result of this conversation with the plaintiff, she delivered the property to the defendant  It must be held, therefore, that the plaintiff, in delivering the property to the defendant, did not intend to deliver it in pursuance of her testator's agreement so to do.  In fact, as above stated, there is no evidence that she knew of any such agreement.

In Grosvenor v. Phillips, 2 Hill, 147, it was said by the court:

"I see no reason why we should not expound the doctrine of transfer very largely upon the agreement of the parties, and upon their intent to carry the substance of that agreement into execution."

In Cayuga County National Bank v. Daniels, 47 N. Y. 631, it was said:

"The conduct of Gutchess & Co. in taking the bill of lading from the captain of the boat, and delivering the same to the plaintiff, and procuring the discount on the credit thereof, shows that they did not intend to deliver the property to the carrier with intent to vest the title absolutely in the defendants, but only upon condition that they accepted and paid the drafts to be drawn against it. In some of the cases some weight appears to have been given to a previous agreement of the owner to ship the property to the consignee.  The only effect of such a prior agreement is that it tends to show that the delivery to the carrier was made in pursuance of such agreement, and therefore with intent to vest the title in the consignee.  The prior agreement to ship the property confers no title upon the consignee.  The owner may violate his agreement and not ship the property at all, or, if he ships, may consign it to another person.  In either event no title is ever acquired by virtue of the unexecuted agreement to ship.  If such an agreement was, as in the present case, made upon a good consideration, an action may be maintained for its breach by the party injured, but no title is acquired.  This shows that it is not the agreement to ship that confers the title, although such agreement is founded upon a good consideration, but that the actual shipment, accompanied by an unconditional consignment in pursuance of such agreement, which proves that the delivery to the carrier was with intent to give the consignee a right of property free from any condition whatever, the owner of the property being free to ship the property or not, and, if he ships, to consign the same to one with whom he has made a prior agreement to consign the same to him or to another, it follows that if he consigns to the former he may impose any conditions upon the consignment he chooses, and that such consignee can acquire title to the property only by performing such conditions."

In the Bailey Case, 49 N. Y. 70, it was said:

"It must appear that the delivery was made with intent to transfer the property."  And again (at page 77):  "The recent case of The Cayuga County National Bank v. Daniels  *  *  *  was decided against the consignees upon the distinction above referred to.  It was held in that case that the consignors did not deliver the property to the carrier with the intention to vest the title in the defendants, except upon condition of paying a draft discounted by the plaintiffs, and that the bill of lading was delivered upon that condition, and that, on the defendants' refusal to comply with the condition, they acquired no right or title to the property, and that the case therefore came within the principle of Bank of Rochester v. Jones, supra."

The foregoing authorities show quite clearly that, unless the defendant received the property pursuant to the contract made between him and the deceased, and for the purpose of carrying out such contract, he acquired no rights in the property as against the estate of the deceased.  And for the reasons above set forth it is

equally clear that in delivering the property to the defendant the plaintiff did not know of such contract, and therefore she did not intend to execute the same. Nor do I think she was at liberty to carry out such contract, even had she been aware of its existence. As the representative of her testator's insolvent estate, it was her duty to conserve the interests of all the creditors, and not to so administer the estate as to work a preference in favor of any creditor, no matter how meritorious his claim might be.

On December 15, 1903, the defendant delivered to the plaintiff an itemized statement of the account, which, after deducting the amount involved in this action, showed a balance in favor of the plaintiff of $329.20, and for which balance the defendant gave to the plaintiff his check, which was retained and collected by her. It is now claimed by the defendant that this constituted an accord and satisfaction. This contention is not well founded. Although the plaintiff accepted the check and used it, she asserted her rights, and insisted that the advancements made to the testator could not be retained by the defendant. The defendant simply paid the portion of his indebtedness as to which there was no dispute. The portion in dispute was of a fixed and definite amount, and no part thereof was included in the check. There is nothing in this case which shows that the plaintiff intended to extinguish or did extinguish her claim against the defendant which is involved in this action. No receipt was given, nor was the check delivered or accepted in full payment, nor did the defendant accompany the check with a condition that it should be received in settlement. On the contrary, it appears from the testimony of one of the witnesses, which is not contradicted by the defendant, that the latter agreed at the time of the delivery of the check to "make it right" if it turned out not to be right, and the defendant testified that he did not tender the check in settlement. The cases which establish an accord and satisfaction from the part payment of an unliquidated claim have no application to such a state of facts.

The plaintiff is entitled to judgment for $527.50, with interest from December 15, 1903, and costs, not including an additional allowance.

Judgment for plaintiff.